Bill D. HENDRICKSON *v.* STATE of Arkansas

CR 93-898                                      871 S.W.2d 362

Supreme Court of Arkansas
Opinion delivered March 7, 1994

*Meredith Wineland*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Bill D. Hendrickson, was found guilty of possession of cocaine with intent to deliver and was fined $50,000 and sentenced to life imprisonment. He was also found guilty of possession of marijuana with intent to deliver, possession of LSD, possession of drug paraphernalia, and being a felon in possession of a firearm, for which he was fined a total of $105,000 and sentenced, respectively, to twenty, ten, ten, and six years in prison. The trial court

ordered that the terms run consecutively.

On appeal, Hendrickson raises three points for reversal: (1) whether the trial court erred in refusing to sever the firearms charge from the drug offenses; (2) whether the evidence was sufficient to sustain his convictions; (3) whether the trial court erred in failing to strike the testimony of a defense witness and to admonish the jury regarding an improper prosecutorial implication. None of Hendrickson's arguments has merit, and we affirm the judgment of the trial court.

On February 19, 1993, Director Roger Walls of the Drug Task Force for the Seventh Judicial District of Arkansas, accompanied by Task Force agents and Saline County sheriff's deputies, executed a warrant at Hendrickson's residence in Benton. When the authorities arrived, Hendrickson was in the house, along with his son, Billy, Jr.; his daughter, Mandi Lewis; her minor child; and Hendrickson's companion, Marsha Pinson.

A room-by-room search was made, and, according to the affidavit filed by Drug Task Force Supervisor John Garner, the agents located and seized the following:

> a large quantity of green vegetable material, consistent with marijuana, in excess of ten (10) pounds, a lighted terrarium which contained several live plants consistent with marijuana, a quantity of white powder believed to be cocaine, in excess of five (5) ounces, a Bible containing seventy-nine squares containing LSD, twenty-two (22) firearms (pistols, rifles, semi-automatic machine pistols, and shotguns), one of which had been defaced by having the serial number filed off, and a quantity of drug-related paraphernalia, i.e., smoking devices, hemostats, cigarette papers, syringes, vitamin B, plastic bags, a vacuum sealing machine, mirrors with razor blades and short straws on them, and scales.

Upon Hendrickson's arrest, the affidavit noted, a substance believed to be cocaine was found on his person. When the officers ran a check on the suspect, the report showed that Hendrickson was a convicted felon, having been convicted in 1984 of a violation of the Uniform Controlled Substance Act and sentenced to seven years in the Arkansas Department of Correction.

The report also indicated that he had been arrested on drug-related charges in Texas in 1990.

At a hearing before the trial began on April 15, 1993, counsel for Hendrickson urged that, in order to avoid prejudice with respect to the felon-in-possession charge, it would be "proper" to conduct "two jury trials and two separate hearings." The State maintained that "bifurcation is always required," and the trial court agreed, ruling that the felon-in-possession charge would not be presented to the jury until after the return of verdicts on the drug charges.

Twenty-five firearms that had been seized in Hendrickson's house were introduced during the State's case-in-chief, but no mention of the felon-in-possession charge was made. Following the return of guilty verdicts on the drug charges, the trial court informed the jury of its duty to consider the felon-in-possession charge, and that portion of the trial proceeded. Again, the jury rendered a verdict of guilty. Hendrickson was sentenced to the terms set forth above and filed a notice of appeal.

## *I. Sufficiency of the evidence*

Although Hendrickson has raised the issue of sufficiency of the evidence as his second point for reversal, this court must consider it before addressing other points on appeal. *Gunter* v. *State*, 313 Ark. 504, 857 S.W.2d 156 (1993). The issue was preserved by timely motions for a directed verdict, which amount to challenges to the sufficiency of the evidence. *Scroggins* v. *State*, 312 Ark. 106, 848 S.W.2d 400 (1993).

The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, either direct or circumstantial. *Langley* v. *State*, 315 Ark. 472, 868 S.W.2d 81 (1993). Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other and that goes beyond suspicion or conjecture. *Banks* v. *State*, 315 Ark. 666, 869 S.W.2d 700 (1994).

In his argument, Hendrickson offers various purportedly exculpatory "facts" to be weighed against the evidence presented at trial by the State. This court, however, views only the evidence that is most favorable to the jury's verdict and does

not weigh it against other conflicting proof favorable to the accused. *Coleman* v. *State*, 314 Ark. 143, 860 S.W.2d 747 (1993).

Hendrickson insists that there was "absolutely no evidence" to link him to the drugs and guns seized at the house other than a billfold and driver's license discovered in a downstairs bedroom and that it was "absurd speculation" to conclude that the location of those items indicated that the bedroom was his. At most, he contends, all that was established by the State was the fact that he was present along with four other persons at the time the premises were searched, yet he concedes in his brief that the building to which the search warrant was delivered was "Bill Hendrickson's house."

The State presented overwhelming evidence at trial of Hendrickson's guilt. Both Randy Lewis and Mandi Hendrickson Lewis, his son-in-law and daughter, testified that the house that was raided by Drug Task Force agents was the appellant's residence. Task Force Director Robert Walls stated that when he and his team of officers entered the house on February 19, 1993, Hendrickson was in the house together with two females, a young man, and a small child.

Director Walls personally conducted a search of the front bedroom on the ground floor of the house and found, in addition to the billfold and driver's license, men's clothing and certificates hanging on the wall bearing Hendrickson's name. Further, Mandi Lewis testified that the downstairs front bedroom was her father's and that he used and had clothing hanging in that room. She said, as well, that Hendrickson also used the entire upstairs of a new addition to the house as a bedroom.

In the downstairs front bedroom, Director Walls discovered scales, a green vegetable substance, a cylinder of some sort containing what appeared to be marijuana, a vacuum sealer, a bong pipe, a white powder substance, a bag containing a substance, two loaded pistols, and a rifle. Officer Henry Efird testified that he found a tray with white powder residue in the bedroom closet. Officer Tim Osborne stated that in the bedroom he discovered a grinder used for reducing rock cocaine to powder form, insulin syringes, and seventy-nine doses of LSD inside a New Testament Bible.

In the upstairs bedroom, Officer Efird found two loaded shotguns, a heater and grow-lights shining on "fully green and growing" marijuana plants estimated to be about three or four months old, twelve bags of green vegetable matter, a tray with a straw and two razor blades on it, scales used for weighing marijuana, and a marijuana seed separator. In a compartment beneath the floor at the top of the stairs, Officer Efird testified, he discovered a tool box containing several vacuumed bags of green vegetable matter and a number of guns.

The Saline County jailer, Lee Lobbs, stated that, upon frisking Hendrickson on his arrival at the jail, he found a small bag of white or yellowish powdery substance and $2,800 in cash. Added to the cash discovered in the house, the total amount seized was $3,573.

Nick Dawson, a drug chemist with the Arkansas State Crime Lab, testified about his analyses of substances found at Hendrickson's house. He concluded that each item tested was a controlled substance. For instance, forty pounds of marijuana were seized at the house. One bag Mr. Dawson examined contained 1.275 grams of cocaine hydrochloride; another contained 0.0185 grams of cocaine; and another contained 112.6 grams of the substance. Under Ark. Code Ann. § 5-64-401(d) (Repl. 1993), the amounts of tested marijuana and cocaine seized more than satisfied the rebuttable presumption that Hendrickson possessed the controlled substances with intent to deliver.

On the other hand, Mr. Dawson testified that the LSD found in the New Testament only amounted to 2.844 micrograms, which is less than the presumptive amount. This court, however, has upheld a conviction for trafficking when less than the presumptive amount was found in the possession of the accused but where other proof of intent to deliver was present. *Conley* v. *State*, 308 Ark. 70, 821 S.W.2d 783 (1992). In *Conley*, the appellant was charged with possession with intent to deliver, but the percentage of cocaine detected was .141 grams, which was less than the presumptive amount. This court held that the testimony of two detectives who observed Conley as he engaged in a transaction involving the sale of cocaine sufficed to prove intent. In the present case, the testimony of the law enforcement officers and the jailer established a connection between the controlled

substances seized and the large amount of cash found in the house and on Hendrickson's person.

In order to prove that a defendant is in possession of a controlled substance, constructive possession is sufficient. *Osborne* v. *State*, 278 Ark. 45, 643 S.W.2d 251 (1982). Constructive possession can be implied when the controlled substance is in the joint control of the accused and another. *Id.* Joint occupancy, though, is not sufficient in itself to establish possession or joint possession. There must be some additional factor linking the accused to the contraband. *Littlepage* v. *State*, 314 Ark. 361, 863 S.W.2d 276 (1993); *Plotts* v. *State*, 297 Ark. 66, 729 S.W.2d 793 (1988). The State must show additional facts and circumstances indicating the accused's knowledge and control of the contraband. *Bailey* v. *State*, 307 Ark. 448, 821 S.W.2d 28 (1991).

Here, testimony revealed that a bag containing a white or yellowish powdery substance was found on Hendrickson's person and that numerous items, such as drugs and drug paraphernalia were found in two rooms identified as Hendrickson's bedrooms in the house that Hendrickson acknowledges was his.

As previously noted, the evidence was more than sufficient to support Hendrickson's conviction. We hold that the trial court did not err in refusing to grant his motions for directed verdict.

## II. Trial court's refusal to sever drug and firearms charges

Hendrickson contends that the felon-in-possession charge should have been severed from the drug charges and that the trial court erred in simply bifurcating the trial. Part of his point for reversal is apparently based on arguments presented at a pre-trial suppression hearing of which no transcript has been lodged on appeal.

The record reflects that, at a hearing held just before the trial in this matter, counsel for the appellant and the State declared their positions regarding the propriety of severance as opposed to bifurcation. The trial court then announced its intention to employ a bifurcated procedure, presenting the felon-in-possession charge after delivery of the jury verdicts in the drug charges.

Although the reading of the information is not included in the record, it would appear, nevertheless, that no allusion was made to the felon-in-possession charge until the jury returned guilty verdicts on the drug charges. When the court instructed the jury on the drug charges, it made no reference to the issue of possession of firearms. Only after the verdicts on the drug charges had been read did the trial court inform the jurors that another charge was pending.

Hendrickson also claims to have been prejudiced by the introduction of firearms during the portion of the trial devoted to his drug charges. However, the record shows that the issue of his status as a convicted felon was never broached prior to the second phase of the trial. No prejudice, therefore, was possible as a consequence of the introduction of the guns as evidence.

Indeed, when an accused is charged with possession of a controlled substance with intent to deliver, evidence of the possession of firearms is relevant to prove intent. *Leonard* v. *State*, 265 Ark. 937, 582 S.W.2d 15 (1979). *See also United States* v. *Brett*, 872 F.2d 1365, 1370 (8th Cir. 1989), where the Eighth Circuit Court of Appeals held that "the presence of a firearm, generally considered a tool of the narcotics dealer's trade, also is evidence of intent to distribute."

In addition, Hendrickson asserts that the trial court erred in failing to give a limiting instruction on the question of firearms. There is, however, no record of Hendrickson having requested such an instruction. It was clearly his responsibility to do so, and his act of omission will not be allowed to inure to his benefit on appeal. *Vick* v. *State*, 314 Ark. 618, 863 S.W.2d 820 (1993).

The decision to sever offenses is committed to the discretion of the trial court. *Henry* v. *State*, 309 Ark. 1, 828 S.W.2d 346 (1992). Hendrickson has failed to show any abuse of that discretion.

*III. Trial court's refusal to strike testimony and admonish jury*

At trial, the following exchange occurred during the prosecutor's cross-examination of defense witness Robert Zimmerman, who had stated that the guns seized at Hendrickson's house

were his rather than the appellant's:

> Q. Robert, would it surprise you to know that most of these guns were reported stolen?
>
> A. No, sir.
>
> Q. It wouldn't surprise you?
>
> A. Because they are not.
>
> [DEFENSE COUNSEL]: Your Honor, I object and ask it be stricken.
>
> [THE PROSECUTOR]: He is on cross-examination. He said they were his guns.
>
> THE COURT (At the Bench): You can cross-examine if he knows they are stolen or not. If he denies it, you can prove it on rebuttal.

Questioning resumed, and the witness continued to insist that the guns belonged to him and were not stolen. No further objection was registered by counsel for the defense.

Hendrickson argues that the jury was prejudiced by the prosecutorial implication that the guns had been stolen by a key defense witness and that the trial court should have given a limiting instruction to the jury. Yet Hendrickson never sought such a limiting instruction. Thus, the court's failure to give an admonitory instruction was not prejudicial error in the absence of a request. *Sheridan* v. *State*, 313 Ark. 23, 852 S.W.2d 772 (1993). The issue was not preserved for appeal.

Affirmed.

CORBIN, J., not participating.