Willie Charles SUGGS *v.* STATE of Arkansas

CR 94-194                                               879 S.W.2d 428

Supreme Court of Arkansas
Opinion delivered July 11, 1994
[Supplemental Opinion on Denial of Rehearing
September 19, 1994.]

542

*Donald A. Forest*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Willie Charles Suggs files this appeal from a judgment of conviction for first degree murder. Suggs's primary point for reversal is the trial court's refusal to allow him to recall two witnesses for cross-examination. Because of certain developments during the trial, we believe the argument must be sustained and therefore we reverse and remand.

On Sunday, December 13, 1992, Debbie Ann McKenzie was found murdered in her apartment. She died of multiple stab wounds. Her two sons, Anthony, age six, and Jamal, age four, were in the apartment. A neighbor, Karla Nolan, was the first to enter the apartment, and the boys told her, "Charles did it." They told the same thing to David Bassford, the first police officer on the scene. The exact time of death was not determined, but approximately thirty hours elapsed between the homicide and the discovery of the body.

The boys were taken to the police station and, with their grandmother present, shown a photo lineup that included a picture of appellant. Both boys picked out appellant as the person who had "hurt" their mother. Appellant was charged with McKenzie's murder.

The state presented the trial testimony by the neighbor and

Officer Bassford as to what the boys told them and also presented testimony from the officer who conducted the photo lineup. He testified the boys identified appellant from the photographs. Both boys were held competent and both testified. Appellant was shown to have been in the area at the time of the victim's death and also that he had had a relationship with the victim. The victim's brother testified that about a month before the murder his sister had called him, frightened and upset. She told him appellant was kicking on her door and trying to break in. She asked her brother to come over and when he arrived appellant had gone.

The jury found appellant guilty of first degree murder and sentenced him to life imprisonment.

When the photo lineup was shown to the boys the session was recorded on audio tape. The photospread consisted of six photographs-the appellant and five other individuals. Both boys identified appellant. However, some ambiguities arise from the questioning and the responses. At one point, after Anthony had picked out the appellant, an unidentified voice states, "I don't see Charles anywhere." At another point, Jamal mentions two other individuals, Mike and Todd, or Toad, with no further explanation.

At the pretrial hearing appellant sought to suppress any evidence of the photo lineup as unduly suggestive. The tape and the transcription of the tape were introduced at that hearing and the trial court held the lineup was not unduly suggestive and denied appellant's motion to suppress. Appellant also wanted to call the boys at the hearing and have them again attempt to pick out appellant from the lineup. The trial court refused that request but stated at the end of the hearing:

> The excited utterances plus the identification of the defendant through his photograph is not unduly suggestive, certainly, and does not create any great probability of misidentification. The fact-finder will be permitted to see, hear and view the identification procedure and give the identification such credibility or weight that they deem it entitled to.

During the state's case-in-chief, the boys testified but the defense did not cross-examine them on the photospread. When the officer who conducted the photospread testified, appellant

attempted to introduce the tape through him and asked that it be played for the jury. The state objected to the admission of either the tape or the transcription on the grounds of hearsay. The trial court sustained the state's objection and refused to allow the tape to be played. Appellant then argued that he should be entitled to recall the boys. The trial court informed appellant that he had already had a full opportunity to cross-examine them and the trial court was not going to allow the defense to bring them back "piecemeal." When appellant began his case, he was again refused permission to recall the boys.

On appeal appellant argues he relied on the trial court's statement at the suppression hearing that the tape of the lineup would be played for the jury. Therefore, he argues, he did not cross-examine the boys on any statements they had made during the lineup because he expected the inconsistencies to be shown when the tape was played.

An analogous situation arose in *Jackson* v. *State*, 249 Ark. 653, 460 S.W.2d 319 (1970). The question was whether the defendant waived his right to an opening statement. Ordinarily the defendant is required to make his opening statement immediately after the state's case and failure to do so is deemed a waiver. *Perryman* v. *State*, 242 Ark. 461, 414 S.W.2d 91 (1967). In *Jackson*, the appellant's attorney stated he would like to reserve his opening statement until the closing of the state's case. There was no objection by the state and the trial judge assented. At the close of the state's case the defendant attempted to make his opening statement but the trial court ruled he had waived his right by not doing so immediately following the state's opening statement. We said:

> Even though a defendant in a criminal case may waive this right, no waiver of a fundamental right should be effective unless it is knowingly made. We do not feel that it could be said that a defendant knowingly waived his right to make his opening statement after having been assured by the trial court, *without objection by the prosecution*, that he could reserve that statement until after presentation of the state's evidence in chief. . . . We feel that the failure of the state to object when the defendant's request was made was at least a silent acquiescence in the proce-

dure proposed. [Emphasis in original.]

■ We think that rationale applies in this case. Here the defense did not waive its right to thoroughly cross-examine the two young witnesses because it was not a knowing waiver, i.e., appellant decided not to cross-examine the boys concerning the photo lineup, because the trial court had stated the tape would be played to the jury. And, as in *Jackson*, the state did not object at the time the trial court announced its intent to play the tape at trial, but waited until after the boys had been cross-examined by the defense and were off the stand.

■ Nor can we say the matter was without prejudice. The boys' testimony was critical to the prosecution's case and it was therefore essential that the defense have the opportunity to fully develop its cross-examination of the two witnesses on whom the state's case largely rested.

■ In *Bowden* v. *State*, 301 Ark. 303, 783 S.W.2d 842 (1990), we spoke of the importance of cross-examination under the confrontation clause of the United States Constitution and art. 2, § 10 of the Arkansas Constitution:

> The right of confrontation provides two types of protection for a criminal defendant: the right physically to face those who testify against him and *the opportunity to* conduct effective cross-examination. *Delaware* v. *Fensterer*, 474 U.S. 15 (1985); *Winfrey* v. *State*, 293 Ark. 342, 738 S.W.2d 391 (1987). *See also Miller* v. *State*, 269 Ark. 409, 601 S.W.2d 845 (1980). In fact, "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Delaware* v. *Van Arsdall*, 475 U.S. 673 (1986); *Davis* v. *Alaska*, 415 U.S. 308 (1974); *Winfrey* v. *State, supra.* [Our emphasis.]

We turn to other points for the guidance of the trial court on remand. Appellant contends the jury should be allowed to hear the tape of the photo lineup and the issue could arise when the case is retried. Appellant argues the tape is the "best evidence" as to what occurred. However, the best evidence rule presupposes the admissibility of the original item of evidence, for which a substituted copy or facsimile is being offered. The rule has no pertinence here.

■ Whether the recording should be played in whole or in part for the jury is discretionary with the trial court, depending on audibility and trustworthiness, etc. *Loy* v. *State*, 310 Ark. 33, 832 S.W.2d 577 (1992); *Hamm* v. *State*, 301 Ark. 154, 782 S.W.2d 577 (1990). Where the use of such evidence rests on the discretion of the trial court and is dependent on a variety of factors we do not ordinarily prejudge its use. Obviously, portions may be useable for purposes of impeachment, with a limiting instruction. *See Ford* v. *State*, 296 Ark. 6, 753 S.W.2d 258 (1988); *Bowden* v. *State*, 297 Ark. 160, 761 S.W.2d 148 (1988).

Appellant assigns error to a witness for the state, Donald E. Smith, testifying as an expert, being allowed to speculate that a hair or hairs found on appellant's shoe came from the victim. Having first testified that he could not exclude the hair fragments from the victim, he later (on second re-direct) expressed his opinion that the hairs "originated from the victim, Debbie McKenzie." Appellant moved for a mistrial or to strike the testimony. Whether this discrepancy will recur on retrial seems unlikely.

■ During the suppression hearing appellant asked permission to call Anthony and Jamal McKenzie to see if they could identify appellant from the six photographs of the photo lineup. The trial court refused on the ground that whether the boys could pick the same photograph a year later was irrelevant. That was and is a matter of the trial court's discretion.

■ Nor do we think it was error for the trial court to find Anthony and Jamal McKenzie competent to testify as witnesses for the state. The trial court went into the matter thoroughly at a pretrial hearing. The two boys demonstrated an ability, given the limitations of their ages, to give information responsively, to understand the difference between truth and falsehood and the consequences of telling a lie. They promised truthfulness. We must, of necessity, look primarily to the trial court in this regard and no abuse was shown. *Jackson* v. *State*, 290 Ark. 375, 720 S.W.2d 282 (1986).

■ Another contention concerns statements by the children to Karla Nolan, a neighbor and family friend, and David Bassford, the first police officer to arrive at the scene. The boys told them that "Charles did it" and "Charles hurt their mother."

Over appellant's objection the statements were admitted as excited utterances. A.R.E. Rule 803(2). Appellant maintains the children "were not upset," "were not crying" and "were not scared." Even if there were no direct proof to the contrary, it would be inconceivable that a four and six-year-old could remain some twenty-four to thirty hours alone with the body of their mother, dead on the living room floor from 144 knife wounds and regard their immediate account as unexcited, whatever the manifestations. But it need not rest on conjecture, as Ms. Nolan said that when she finally prevailed on the boys to open the door, and saw the broken furniture and body, the boys "hollered Charles did it." Officer Bassford described the children as being "in an emotional state. The first thing they told me was Charlie or Charles hurt their mother. They were in tears. You could tell they were upset. . .scared."

Appellants pro se motion for a dismissal of charges pursuant to A.R.Cr.P. Rule 28, speedy trial, is patently meritless. The offense was alleged to have occurred on December 3, 1992, and appellant's trial occurred on November 8, 1993.

Reversed and remanded.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
## SEPTEMBER 19, 1994

*Donald A. Forrest*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. By petition for rehearing appellant asks that we reverse an order revoking his probation in a sepa-

rate case — Crittenden Circuit No. CR91-246. Appellant had pled guilty to burglary and theft-of property committed on March 5, 1991. He was placed on probation for ten years conditioned on his good behavior and law abidance. After the murder of Debbie Ann McKenzie the state moved to revoke probation.

The revocation issue was submitted in a bench trial while the jury was deliberating on the murder charge (Crittenden Circuit No. CR92-1004). The trial judge concluded that the preponderance of the evidence established that appellant purposefully caused the death of Debbie Ann McKenzie, revoking appellant's probation and sentencing him to twenty years in the Department of Correction. The only objections in those proceedings were that the revocation hearing was not held within sixty days and that none of the witnesses purporting to place appellant at the murder scene had identified him in the courtroom. Neither point is argued on appeal, nor was the finding of the trial court clearly erroneous. Rehearing denied.