Albert Lee KILPATRICK *v.* STATE of Arkansas

CR 95-416                                              912 S.W.2d 917

Supreme Court of Arkansas
Opinion delivered December 18, 1995

730

*John Joplin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

BRADLEY D. JESSON, Chief Justice. The appellant was convicted of possession of cocaine with intent to deliver, Ark. Code Ann. § 5-64-401 (Repl. 1993), and of being a felon in possession of a firearm, Ark. Code Ann. § 5-73-103(a)(1) (Repl. 1993). As an habitual offender, he received sentences of forty-four years on the drug charge and twelve years on the firearms charge, the sentences to run concurrently. His arguments for reversal concern the sufficiency of the evidence to support his convictions, the denial of his motion to suppress, and four evidentiary rulings by the trial court. We find no error and affirm.

The appellant was the owner of an automobile detail shop in Vian, Oklahoma, which is about ten miles west of Sallisaw, Oklahoma. On December 21, 1993, he thoroughly cleaned and detailed a 1989 black Ford Ranger pickup belonging to a Mr. Sammy Henry. According to the appellant, he planned to drive the vehicle to Fort Smith, Arkansas to visit relatives and pick up his fiancee from work. She was not scheduled to leave work until late that evening[1], but the appellant left for Fort Smith sometime during the day. Along the way, he stopped in Sallisaw where he picked up his cousin, Eric Johnson.

---

[1]Although the appellant testified that his fiancee's shift ended at 10:45 p.m., there was also evidence that her usual hours were 3:45 p.m. until 12:00 midnight or 1:00 a.m.

Sometime after 9:30 that same evening, Detective Wayne Barnett of the Fort Smith Police Department was contacted by a confidential informant. According to the trial testimony, the informant told the detective that two black males from the Sallisaw, Oklahoma area, driving a black 1989 Ford Ranger pickup with Oklahoma tags, were selling crack cocaine. The informant stated further that the vehicle was parked in front of a residence near the intersection of 12th and G Streets in Fort Smith.

Shortly thereafter, Barnett contacted Detective Binyon with the Department's narcotics unit. Binyon testified that the call came at approximately 9:55 p.m. Barnett relayed the information he had received from the informant. Within five minutes, Binyon and his partner, Detective Bruce, travelled in an undercover vehicle to an alley near the intersection of 12th and G Streets. From that vantage point, they conducted visual surveillance and observed a small, black Ford pickup with Oklahoma tags parked in front of a residence at 12th and G Streets. According to Binyon, he had, in the past, executed a search warrant at the residence and had made several arrests at the intersection, an area well known for drug trafficking.

The detectives watched as three or four people came up to the truck, stayed for a short period, then left. Detective Bruce testified that two black males were continuously around the pickup, while other individuals came and went. About twenty minutes into the surveillance, the two men who had been standing by the truck got into it and pulled away. Bruce and Binyon called a patrol unit, and the truck was stopped before it had travelled more than a block and a half. The appellant was driving the truck and Eric Johnson was the passenger.

When Bruce and Binyon arrived at the stopped vehicle, they asked the appellant and Johnson to exit the vehicle and told them of the reason for the stop. Bruce entered the truck on the driver's side and immediately observed a plastic bag lying on the hump between the split bench seats. The bag contained a substance which the State Crime Lab later concluded was 1.868 grams of cocaine. Binyon, entering from the passenger side, found a .38 caliber revolver under the passenger seat. He also found, in the same area as the plastic bag, a pill container which held ten small chunks of a rock-like substance. The State Crime Lab later deter-

mined that the substance was .095 grams of cocaine base. Both detectives testified that the plastic bag and the pill container were in plain view between the driver and passenger seats.

After the contraband was found, the appellant and Eric Johnson were placed under arrest. They were tried together on the same charges and both found guilty.

For his first point of error, the appellant argues that the evidence was insufficient to support his conviction on either charge. In particular, he argues that the state did not prove that he was in possession of either the controlled substance or the firearm. He also argues that the state did not prove any intent to deliver the controlled substance.

Evidence to support a conviction, whether direct or circumstantial, must be of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or another. On appeal, we view the evidence in a light most favorable to the appellee and look only to that evidence which supports the verdict. *Smith* v. *State*, 308 Ark. 390, 824 S.W.2d 838 (1992). When possession of contraband is an element of an offense, the state need not prove literal, physical possession. Constructive possession can be implied when the contraband is in the joint control of the accused and another person. *Littlepage* v. *State*, 314 Ark. 361, 863 S.W.2d 276 (1993). However, joint occupancy of the vehicle, standing alone, is not sufficient to establish possession. There must be some other factor linking the accused to the contraband. *Mings* v. *State*, 318 Ark. 201, 884 S.W.2d 596 (1994).

Among the "linking" factors this court has considered in cases involving vehicles occupied by more than one person are: 1) whether the contraband is in plain view; 2) whether the contraband is found with the accused's personal effects; 3) whether the contraband is found on the same side of the car seat as the accused was sitting or in near proximity to it; 4) whether the accused is the owner of the automobile, or exercises dominion and control over it; and 5) whether the accused acted suspiciously before or during the arrest. *Plotts* v. *State*, 297 Ark. 66, 759 S.W.2d 793 (1988). In addition to the five factors set out in *Plotts*, we have also considered the improbability that anyone other than the occupants of the vehicle placed the contraband in

the vehicle, and the improbable nature of the accused's explanation for his journey. *Mings* v. *State, supra.*

■ In this case, the cocaine was in plain view. It was lying in proximity to the appellant in an area easily accessible by him. The handgun, while not in plain view, was also in an area accessible to the appellant. Detective Binyon testified that the truck cab was so small that anyone in the vehicle had access to anything inside. Additionally, the appellant exercised dominion and control over the vehicle. Although he did not own it, he had driven it from Vian, Oklahoma for his own personal purposes and had been the only one to drive it that day. Actual ownership is not required. *Littlepage* v. *State, supra.* Further, the appellant testified that he had thoroughly cleaned the vehicle prior to using it and would have noticed any contraband in it. Therefore, the jury could have dismissed the possibility that the drugs or the gun were in the truck when the appellant borrowed it. The jury might also have inferred that one who possesses cocaine with intent to deliver might also possess a handgun. Detective Binyon testified that it was common to find handguns in close proximity to drugs. This court has recognized that firearms are considered a tool of the narcotics dealer's trade. *Hendrickson* v. *State*, 316 Ark. 182, 871 S.W.2d 362 (1994). Finally, the jury might have found the appellant's explanation that he came to Fort Smith long before his fiancee was scheduled to leave work improbable. Taken together, these factors amount to substantial evidence to support the jury's determination that the appellant was in possession of the cocaine and the firearm.

■■ The appellant also claims there was insufficient evidence of intent to deliver the cocaine. In addition to the evidence already set out in this opinion which would support that inference by the jury, the amount of cocaine possessed — in excess of one gram —created a statutory presumption that it was possessed with the intent to deliver. See Ark. Code Ann. § 5-46-401(d) (Repl. 1993). This is sufficient evidence of the element of intent. *Sanchez* v. *State*, 288 Ark. 513, 707 S.W.2d 310 (1986). The appellant attempts to argue that the presumption is unconstitutional because it shifts the burden of proof away from the state. He did not raise this argument below, so it cannot be raised on appeal. *Williams* v. *State*, 320 Ark. 211, 895 S.W.2d 913 (1995). In any event, the presumption is rebuttable and has withstood

similar constitutional challenges in this court. *Hooper* v. *State*, 257 Ark. 103, 514 S.W.2d 394 (1974); *Stoner* v. *State*, 254 Ark. 1011, 498 S.W.2d 634 (1973).

For his next point, the appellant argues that the search of his vehicle was the result of an illegal stop and detention. Rule 3.1 of the Arkansas Rules of Criminal Procedure provides, in pertinent part, as follows:

> A law enforcement officer . . . may . . . stop and detain any person who he reasonably suspects is committing, has committed or is about to commit (1) a felony...if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

In *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 284, *cert. denied*, 459 U.S. 882 (1982), we said that the justification for an investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized and articulable reasons indicating the person or vehicle may be involved in criminal activity. We also look to the definition of "reasonable suspicion" as set out in Ark. R. Crim. P. 2.1, which reads:

> 'Reasonable suspicion' means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

The thrust of the appellant's argument is that the information provided by the confidential informant was so unreliable and so vague that it could not provide such reasonable suspicion. It is true that there was minimal evidence to show the reliability of the informant in this case. Detective Barnett testified that the informant had not provided him with any information leading to an arrest. However, Barnett had been able, in the past, to confirm the veracity of some of the information provided. Further, he was aware that the informant had worked with other detectives on cocaine cases. While we do not rule on whether such evidence would be sufficient to establish probable cause, see *Rowland* v. *State*, 262 Ark. 783, 561 S.W.2d 304 (1978), we

hold that this evidence of reliability, combined with the accuracy of the informant's information and the detective's testimony regarding the area's reputation for drug traffic, was enough to give the officers "specific, particularized and articulable reasons indicating the person or vehicle may be involved in criminal activity." *Hill* v. *State, supra.*

Likewise, we hold that the informant's description was not so vague as to remove any reasonable suspicion for the stop and detention. While we do not rule on whether such a description would be sufficient to form the basis for an arrest, see *Branam* v. *State*, 277 Ark. 204, 640 S.W.2d 445 (1982), we hold that the information provided was sufficiently detailed that, when combined with all other factors, it gave the officers a legal basis for the stop.

We now turn to the evidentiary issues. We initially note that the trial court is given great latitude on questions regarding admissibility of evidence and will not be overturned absent an abuse of discretion. *Sasser* v. *State*, 321 Ark. 438, 902 S.W.2d 773 (1995).

Before trial, appellant filed a motion in limine asking that the state not be allowed to mention that the narcotics officers had received a call saying there were two black males from the Sallisaw, Oklahoma area who were selling cocaine or had it in their possession. Appellant claimed the evidence would be highly prejudicial, apparently making an argument pursuant to A.R.E. Rule 403. The evidence had a high probative value. It served to explain the reason behind the officers' surveillance of the appellant's activity. In addition, the trial court gave a limiting instruction to the jury, informing them that they were not to look to the evidence for the truth of the matter asserted, but to show why the officers acted as they did. We have said that a limiting instruction may remove the inflammatory effect of evidence. *Suggs* v. *State*, 317 Ark. 541, 879 S.W.2d 428 (1994); *Crawford* v. *State*, 309 Ark. 54, 827 S.W.2d 134 (1992). In view of the probative nature of the evidence and the trial court's limiting instruction, we cannot say that the court abused its discretion in admitting the evidence.

The second evidentiary issue concerns the state's use of the appellant's prior convictions for impeachment purposes.

See A.R.E. Rule 609. The appellant's credibility was impeached with a 1984 robbery conviction and a 1988 sexual abuse conviction. The appellant contends that, since the state had the robbery conviction at its disposal, use of the sexual abuse conviction was unnecessary and prejudicial. In the recent case of *Schalski* v. *State*, 322 Ark. 63, 907 S.W.2d 693 (1995), we held that the trial court has discretion in determining the admissibility of prior convictions for impeachment purposes. We also noted that Rule 609 places no limit on the number of convictions used. The appellant cites us to *Jones* v. *State*, 274 Ark. 379, 625 S.W.2d 471 (1981), in which we held it was error to admit evidence of a sexual abuse conviction. However, the *Jones* case involved an appellant charged with sexual abuse. Our ruling was predicated on the similar nature of the crime charged and the prior conviction.

The third evidentiary point concerns a letter written by the appellant's co-defendant, Eric Johnson, to a federal magistrate judge. The letter read as follows:

Dear Miss Magistrate Judge Beverly Stites.

I Eric Johnson, hereby give the following statement. Mr. Albert Kilpatrick gave me a ride on the night of December 22nd [sic] year of 1993, and did not know of the contents which was placed in his vehicle.

During Johnson's testimony, he said nothing which indicated that the appellant had any knowledge of the contraband in the vehicle. The trial judge refused to admit the letter because it was consistent with Johnson's testimony. The judge's ruling was correct. Extrinsic evidence of a prior *inconsistent* statement is allowed under certain circumstances. A.R.E. Rule 613(b). Since there was nothing in the letter which contradicted anything Johnson said on the witness stand, the letter would have no impeachment value and would strictly be cumulative.[2] We find no abuse of discretion in the exclusion of this evidence.

For his final argument, the appellant claims that the trial court should have granted a mistrial when, during his cross examination, he was asked if he knew of any reason why someone

---

[2]The appellant does not argue that the letter falls within the ambit of A.R.E. Rule 801(d)(1)(ii) which allows use of prior consistent statements in certain instances.

would call the police and say there were two people from Sallisaw dealing crack out of a Ford Ranger pickup. Appellant asked for a mistrial, saying the jury had been told to consider that evidence for a specific purpose only and that the state's question gave "too much credence" to the informant's report.

A mistrial is a drastic remedy proper only when there is error beyond repair which cannot be corrected by any curative relief. A trial court's denial of a mistrial will be overturned only for an abuse of discretion or manifest prejudice to the appellant. *Cupples* v. *State*, 318 Ark. 28, 883 S.W.2d 458 (1994). The admission of this evidence, even if it can be considered error, was not so drastic or prejudicial as to warrant a mistrial. The jury had already received two limiting instructions on the nature of this evidence. The information provided by the informant had already come into evidence through the state's witnesses. Under these circumstances, we cannot say the appellant suffered such prejudice as to call for a mistrial.

Affirmed.