Issac A. COLBERT *v.* STATE of Arkansas

CR 99-1101                                    13 S.W.3d 162

Supreme Court of Arkansas
Opinion delivered March 23, 2000

*Christy M. Adams,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Valerie L. Kelly,* Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Isaac Colbert brings this appeal from his conviction for possession of a controlled substance with intent to deliver. He argues that the trial court erred in denying his motion to suppress evidence seized from his vehicle. We agree, because the initial stop of his car was constitutionally invalid, and because the admission of the cocaine seized from his car was not harmless error. Therefore, we reverse his conviction.

In the late afternoon of March 18, 1999, a warrant was issued for the search of Colbert's house, located at 330 West Olive Street in Prescott, Arkansas. The warrant was based on information gained from a confidential informant who had purchased crack cocaine at Colbert's house. The scope of the warrant covered the Colbert residence and all curtilage, vehicles, persons, and outbuildings on the premises.

Investigator Todd Daley of the Arkansas State Police and Investigator Wayne Kisselburg with the Nevada County Sheriff's Office went to Colbert's house at about 6:15 that evening to execute the warrant. However, when they drove up to his house, they saw that his car was not there, so they decided not to search the house at that point. Rather, they chose to drive around Prescott, looking for Colbert's car, because they had a suspicion that if he was not at home, the drugs might be on him. The officers later testified that they chose to look for Colbert's car because they wanted him to return home and allow them access to his house so they could avoid damaging it.

As they drove around looking for Colbert, Daley and Kisselburg spotted Colbert's car turning onto Highway 67, heading away from town. Although Colbert was not speeding or committing any traffic violation, Daley instructed Deputy Danny Martin, who was driving a marked patrol vehicle, to pull Colbert over. Colbert stopped when Martin flashed his blue lights at him. Daley stopped his vehicle in front of Colbert's and, as Daley departed his car and walked back to Colbert's car, Colbert's car began rolling towards Daley. Unsure whether Colbert's foot had merely slipped off the brake pedal or if he was attempting to flee, Daley drew his gun and ordered Colbert to stop and get out of the vehicle.

As Colbert got out, a piece of plastic fell to the ground. Kisselburg picked it up and saw a substance that looked like crack

cocaine. At that time, Daley placed Colbert under arrest for possession of cocaine, and proceeded to search the car. The officers found one rock of cocaine on the driver's side floorboard, a plastic bag containing cocaine residue and three smaller rocks of cocaine (also on the driver's side floor), and what appeared to be a crack pipe stuffed down between the passenger's seat and the center console.

Once the search of the car was completed, Daley executed the search warrant at Colbert's house around 7:15 p.m. The search turned up $110.00, a .22 pistol, approximately 45 rounds of .22 ammunition; a .22 rifle with scope; a 12-gauge shotgun; and a paper towel containing two rocks of cocaine totaling .576 grams in the butter tray of the refrigerator. The total amount of cocaine found, including that from the car, was a little over 1.3 grams.

After Colbert was charged with possession of a controlled substance with intent to deliver and simultaneous possession of drugs and a firearm, he filed a motion to suppress the evidence seized from the car. Colbert argued that he was stopped without any probable cause, and that the subsequent search of his car and seizure of the cocaine violated his Fourth Amendment rights. The trial court denied this motion, finding that the officers were acting in good faith. The case proceeded to trial, and Colbert was convicted and sentenced to life in prison on each of the two counts.

On appeal, Colbert argues that the trial court erred in denying his motion to suppress the evidence seized from his car because the traffic stop was illegal. He does not challenge the execution of the search warrant at his home or his conviction on the simultaneous possession charge.

When reviewing the denial of a motion to suppress, this court makes an independent examination based upon the totality of the circumstances and reverses only if the decision is clearly against the preponderance of the evidence. *Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999); *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997). The facts and evidence are reviewed in the light most favorable to the state. *Id.*

Rule 14.1 of the Arkansas Rules of Criminal Procedure provides that a police officer "who has reasonable cause to believe that a moving ... vehicle ... contains things subject to seizure may, without a search warrant, stop, detain, and search the vehicle and

may seize things subject to seizure discovered in the course of the search where the vehicle is: (i) on a public way...." Reasonable cause, as required by this rule, exists when officers have trustworthy information which rises to more than mere suspicion that the vehicle contains evidence subject to seizure and a person of reasonable caution would be justified in believing an offense has been committed or is being committed. *Reyes v. State*, 329 Ark. 539, 954 S.W.2d 199 (1997) (citing *Bohanan v. State*, 324 Ark. 158, 919 S.W.2d 198 (1996)).

Although Colbert does not explicitly rely on Rule 14.1, he bases a large part of his argument on *Tillman v. State*, 271 Ark. 552, 609 S.W.2d 340 (1980), in which this rule figured prominently. The court in that case held that "[t]he right of police officers to stop a vehicle on the public highway for the purpose of searching it exists when there is probable cause for that action, i.e., when the facts within the knowledge of the officers ... amounts to *more than a mere suspicion* that it contains something subject to seizure." *Id.* at 557 (emphasis added).

■ The officers in this case admitted that at the time they obtained the warrant to search Colbert's house, they did not have probable cause to search Colbert's vehicle. Nevertheless, they chose to locate Colbert and his car because, as Officer Daley testified at the suppression hearing, they felt there might be a *possibility* that Colbert could have taken some or all of the drugs with him. Daley stated, "[a]lthough I suspected there may be some drugs, I had no probable cause to believe there was anything in the car." Based on these facts, the officers appeared to have no more than possible or mere suspicion that Colbert possessed drugs when they stopped Colbert's car. Consequently, we hold the officers failed to comply with Rule 14.1.

Rule 3.1 also governs police stops. That rule provides that "[a] law enforcement officer lawfully present in any place may ... stop and detain any person who he *reasonably suspects* is committing, has committed, or is about to commit ... a felony. . . , if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct." (Emphasis added.) Ark. R. Crim. P. 3.1; *see also* Ark. Code Ann. § 16-81-204 (1987). Rule 2.1 of the Arkansas Rules of Criminal Procedure defines "reasonable suspicion" as "a suspicion based on facts or

circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." *See also* Ark. Code Ann. § 16-81-202 (1987).

Again, investigators Daley and Kisselburg had only a "bare suspicion" that Colbert had taken the drugs with him in his car; they did not articulate a single reason why they might have thought that to be the case. It is worth noting that the search warrant was issued based upon an alleged controlled buy that took place in Colbert's house, not his car. Although the State argues that the search warrant, obtained on the basis of a confidential informant's purchase of cocaine from Colbert, gave the officers reasonable suspicion to stop Colbert's car, the officers themselves admitted that the purpose of the stop was not to "determine the lawfulness of Colbert's conduct," as required by Rule 3.1. Rather, the reason they gave for stopping Colbert was to ask him to return to his house so they could search it when he was present. This, however, does not fall within the language of the rule.

When the initial "reasonable suspicion" is lacking, the stop itself is impermissible. *See Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998). In that case, this court held that where the arresting officer's suspicions were aroused only *after* he asked Stewart to approach his car, those suspicions could not form the justification needed for the initial stop. *Stewart*, 332 Ark. at 145, 964 S.W.2d at 797. Such is the case here, as well.

The State also attempts to analogize this case to that presented in *Kilpatrick v. State*, 322 Ark. 728, 912 S.W.2d 917 (1995), in which this court affirmed the trial court's denial of a motion to suppress for the reason that the police had reasonable suspicion to stop and search defendant Kilpatrick on the basis of a tip from a confidential informant. However, there, the case turned on the reliability of the informant, who had given detailed information about exactly who was involved in the drug sales and where the sales were taking place. In affirming the trial court, this court held that the prior reliability of the informant, combined with the accuracy of the informant's information and the detective's knowledge that the area was known for drug trafficking, "was enough to give the officers specific, particularized and articulable reasons indicating

the person or vehicle may be involved in criminal activity." *Kilpatrick*, 322 Ark. at 736, 912 S.W.2d at 921.

■ No such specific, particularized, or articulable reasons were present here. The traffic stop of Colbert's car was unnecessary; the search warrant could have been executed any time, day or night, and the officers knew they could enter Colbert's house regardless of whether he was there. The only lawful reason the officers could have stopped Colbert was if they reasonably suspected him of committing a felony, *if* the stop was reasonably necessary to determine the lawfulness of Colbert's conduct. However, Colbert was not engaging in any apparent lawless conduct; instead, he was pulled over on the basis of the officers' unreasonable suspicion that he might have drugs on him. Thus, the officers' initial stop of Colbert was invalid under Ark. R. Crim. P. 3.1.

■■ Although the stop cannot be justified under the Arkansas Rules of Criminal Procedure, the State argues that the inevitable discovery rule should validate the search of Colbert's car. That rule provides that evidence otherwise subject to suppression can be admissible if the State proves by a preponderance of the evidence that the police would have inevitably discovered the evidence by lawful means. *Thompson v. State*, 333 Ark. 92, 966 S.W.2d 901 (1998); *Brunson v. State*, 296 Ark. 220, 753 S.W.2d 859 (1988). The State urges that if Colbert's car had been at his house when the officers first drove by, or had the officers merely waited for Colbert to come home, the warrant would then have permitted them to search the car. However, this argument ignores the fact that Colbert was not returning home when the officers spotted him. Because Colbert appeared to be leaving town when the officers decided to stop him, it is impossible to conclude the officers would have inevitably discovered drugs in Colbert's car when he eventually returned home. Nor did the officers suggest they intended to stake out Colbert's house to await his return. In short, the State fails to show how the inevitable discovery rule can be employed to validate the stop and search of Colbert's car.

In its final argument, the State asserts that, even if the trial court erred in allowing the drugs seized from Colbert's car, the error was harmless. Again, we must disagree.

As mentioned earlier, Colbert does not challenge his conviction of simultaneous possession of drugs and a firearm, which resulted from the officers' finding .576 grams of cocaine and firearms in their search of Colbert's house. The State argues this contraband can be used also to prove Colbert violated Ark. Code Ann. § 5-64-401 (Supp. 1999), which makes it a felony to possess a controlled substance with the intent to deliver it. The State cites *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994), where the court held that, even where a criminal defendant possesses less than the presumptive amount, a conviction can stand where other proof of intent to deliver is present. In *Johnson v. State*, 333 Ark. 673, 972 S.W.2d 935 (1998), we held that when an accused is charged with possession of a controlled substance with intent to deliver, evidence of possession of firearms is relevant to prove intent.

■ The *Hendrickson* and *Johnson* holdings are good for the proposition that firearms evidence may be used to prove intent to deliver and can be substantial evidence to affirm a conviction for possession with intent to deliver. However, those cases are not otherwise applicable to the facts in the instant case. Here, the State was allowed to introduce inadmissible evidence taken from Colbert's car to show he possessed 1.3 grams of cocaine, which, unlike the .576 grams found in Colbert's house, was more than the presumptive amount Arkansas law established to prove intent to deliver. The prosecutor relied on the drugs seized from Colbert's car and argued its significance to the jury, and the jury had a right to rely on the drugs taken from the car to find Colbert violated § 5-64-401, since the trial court allowed that evidence at trial.

■ The State cites *Rockett v. State*, 318 Ark. 831, 890 S.W.2d 235 (1994), in support of its harmless error argument, but there this court stated that illegally seized items from a motel room did not affect the defendant's guilty verdict based upon other overwhelming evidence of defendant's guilt. Here, although the jurors could have found Colbert had violated § 5-64-401 by inferring that he intended to deliver drugs, since firearms were found in his house, that sole factual issue was not presented to them. To the contrary, the State's case, beginning with its opening argument, relied on the fact that Colbert had over 1.3 grams in his car and house and that the amount of cocaine the General Assembly had established to be sufficient to raise that legal presumption of intent to deliver is one

gram. Harmless error is simply inapplicable to the evidence and facts now before us.

For the reasons above, we reverse and remand.