Perry Eugene JOHNSON *v.* STATE of Arkansas

CR 97-1447                                                  972 S.W.2d 935

Supreme Court of Arkansas
Opinion delivered June 25, 1998

*Larry Dean Kissee*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Perry Eugene Johnson brings this appeal from the jury's convictions of possession of controlled substance with intent to deliver and simultaneous possession of drugs and firearms. He was given consecutive fifteen-year sentences, totalling thirty years' imprisonment. He argues seven

points for reversal, including ones involving the interpretation and constitutionality of Arkansas's simultaneous-possession statute, Ark. Code Ann. § 5-74-106 (Repl. 1997). We accept jurisdiction of this appeal under Supreme Court Rule provisions 1-2(b)(1), (3), and (5).

Because this court addresses challenges to the sufficiency of the evidence before considering other points on appeal, *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996), we first decide Johnson's contention that the State failed to prove his conviction of the simultaneous possession of drugs and firearms. In determining the sufficiency of the evidence, we need only ascertain the evidence most favorable to the appellee, the State in this instance. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997).

Johnson was a law enforcement officer at Tuckerman of Jackson County, when Officer Marvin Poe of the First and Third Judicial District Task Force received a tip from a confidential informant that Johnson was involved with his brother in dealing in illegal drugs. Sometime in early June 1996, Poe was given his first information by the informant that Johnson was on his way to his brother's residence in Heber Springs, Cleburne County, where he was to pick up an ounce of methamphetamine. Officer Poe in turn gave this information to the Cleburne County Sheriff, who verified Johnson was later seen that day at his brother's house. Later, on July 3, 1996, Poe was again notified that Johnson was planning to return to his brother's residence for more methamphetamine. This time, when Poe contacted the Cleburne County Sheriff, the Sheriff not only verified Johnson's visit to his brother's house, but he also notified Poe when Johnson left, so Poe could have two of his men follow Johnson's return to Jackson County. Johnson drove to Elgin Ferry, Jackson County, where Officers Poe and Mickey Brock awaited and stopped Johnson. Johnson consented orally and in writing to the officers' search of his car, wherein the officers found some methamphetamine inside a road atlas on the front passenger seat and a .45 caliber Llama automatic pistol on the left-rear floorboard. The officers advised Johnson of his rights, arrested him, and took him and his car to the Newport Police Department.

After the officers initially questioned him at the police station, Johnson agreed to cooperate with the drug task force in exchange for a promise from Poe that Johnson would be charged only with simple possession of methamphetamine and a recommendation would be made that Johnson be placed on probation. This agreement was conditioned on Johnson's being truthful and on finding no more drugs. Johnson signed another written consent to search, and subsequently, officers found a plastic bag containing one ounce of methamphetamine hidden in the rear-fender well of Johnson's vehicle.

Pointing to the State's foregoing proof, Johnson asserts the evidence falls short of showing that he violated § 5-74-106, which prohibits, among other things, a person's unlawful possession with intent to deliver a controlled substance while in possession of a firearm. Relying on *Manning v. State*, 330 Ark. 699, 956 S.W.2d 184 (1997), Johnson argues that, to prove he violated § 5-74-106, the State was required to show some connection between his drug activity and the firearm found in his vehicle. He claims there was no evidence showing any connection between the pistol and the drugs hidden in the car. Such an assertion obviously conflicts with the proof. While most of the methamphetamine was concealed outside in the car's rear-fender well, the officers initially found in the car's front passenger seat a smaller amount of methamphetamine, which was in close proximity to the pistol located on the floorboard behind Johnson's driver's seat. Johnson was the sole occupant of the car, and was clearly in possession of both an illegal drug and a firearm at the same time. This evidence alone is sufficient to support the conviction for simultaneous possession under § 5-74-106. As we held in *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994), when an accused is charged with possession of a controlled substance with intent to deliver, evidence of possession of firearms is relevant to prove intent.

Next, we turn to Johnson's argument that the trial court erred in denying his motion to suppress evidence found and seized from his vehicle. Johnson argues, citing Ark. R. Crim. P. 3.1 and 2.1, that the drug task force agents lacked reasonable cause to stop him and search his vehicle. He contends the only information the agents had was that Johnson would be travelling back to Jackson

County, following a certain route from his brother's house in Heber Springs. Johnson avers the informant provided Poe with no other details. He further claims there was no showing that this particular informant had been reliable in the past and that, in fact, the record reveals the only other information provided by the informant proved to be incorrect.

■ Rule 3.1 in pertinent part provides an officer may stop and detain any person who he reasonably *suspects* is committing, has committed, or is about to commit a felony, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. (Emphasis added.) Rule 2.1 defines "reasonable suspicion" to mean suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion. We have held that such an investigatory stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person or vehicle may be involved in criminal activity. *Frette v. State,* 331 Ark. 103, 959 S.W.2d 734 (1998); rev'd *Frette v. State,* 58 Ark. App. 81, 947 S.W.2d 15 (1997); *see also Kilpatrick v. State,* 322 Ark. 728, 912 S.W.2d 917 (1995).

■ In the instant case, Poe testified that he had more than one source advising him that Johnson was involved in drug trafficking. However, as to the informant in this matter, Poe related that the informant had supplied him with reliable information on many prior occasions. And, as previously discussed hereinabove, this same informant had given Poe an earlier tip that Johnson was about to make an illegal drug visit to Johnson's brother's house on a certain date in June 1996, and Poe was able to verify certain aspects of that visit by staking out officers to observe the brother's home. With this prior information and knowledge, Poe, upon receiving a second tip on July 3, 1996, from the same informant, established a more elaborate stake out, which, this time not only verified Johnson's trip to his brother's house and his return to Jackson County, but also was designed to stop and detain Johnson. We hold that, under the totality of the circumstances, Poe's tip

carried with it sufficient evidence of reliability to justify an investigatory stop under Rule 3.1, and that the trial court was correct in so ruling.

In his third argument, Johnson argues that his inculpatory statement to Officer Poe should have been suppressed because Poe falsely promised to recommend that he be given probation. He cites the established rule that custodial statements are presumed to be involuntary, and asserts that his statement was not freely and voluntarily given because he gave his statement in reliance upon Poe's promise, which was not forthcoming. Johnson's argument was dependent upon whether the trial court believed his version of what prompted his statement to Officer Poe. While Poe told Johnson he would recommend probation to the prosecutor if Johnson was truthful and if no other drugs were found, Poe testified that those conditions were never met. More drugs were found. Although Johnson denied any knowledge of the additional methamphetamine found in his car's fender well after Poe made his promise, the trial court was not bound to believe Johnson's story. *See Clark v. State*, 328 Ark. 501, 944 S.W.2d 533 (1997). Accordingly, we affirm the trial court's ruling denying Johnson's motion to suppress his statement.

Johnson's fourth point is that the trial court erred in refusing to redact evidence of other criminal acts contained in his statement. The statement included his admissions to having sold drugs to other named persons; however, Johnson argues those other crimes were inadmissible under Ark. R. Evid. 404(b).

Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, but such evidence is admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. We have interpreted this rule as permitting the introduction of testimony of other criminal activity if it is "independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible with a proper cautionary instruction by

the court." *Abernathy v. State*. 325 Ark. 61, 925 S.W.2d 380 (1996). We have stressed the requirement that there be a very high degree of similarity between the charged crime and the prior uncharged act. *Id.* In other terms, we have said that evidence offered under Rule 404(b) must be independently relevant, thus having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Bragg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997).

■ Here, Johnson was charged with possession with intent to deliver methamphetamine; consequently, we conclude that Johnson's prior similar criminal acts were admissible to show his intent. *See Scroggins v. State*, 312 Ark. 106, 848 S.W.2d 400 (1993). Based on the crimes with which Johnson was charged and the prior similar crimes to which he admitted, we hold the trial court did not abuse its discretion in refusing to remove the other-crime evidence from Johnson's statement.

In his fifth contention, Johnson argues Arkansas's simultaneous-possession statute, § 5-74-106, is unconstitutional because it overlaps and conflicts with Ark. Code Ann. § 5-73-120 (Repl. 1997). He points out that § 5-73-120 provides certain strictures that make it unlawful for a person to carry a weapon (including a handgun) and that, under subsections (C)(1) and (4), the statute specifically allows a person to possess and carry a weapon in one's home or when on a journey. He submits that, while the simultaneous-possession and carrying-a-weapon statutes both prohibit the possession of a weapon and provide a defense for when one is in his or her home, the simultaneous-possession statute omits the defense for when one is on a journey. Johnson extends his argument to pose questions, such as, is simple possession of a firearm sufficient in itself to expose one to liability under § 5-74-106, and must there be some connection between the drugs and the firearm, and if so, what connection? He further muses is the defense of being on a journey a defense under § 5-74-106? Johnson submits that these questions show § 5-74-106 is overly broad and vague.

■ Johnson's argument and questions simply ignore the fact that §§ 5-74-106 and 5-73-120 deal with two entirely different offenses. For example, § 5-74-106 is not to be invoked merely because a person possesses a handgun. In other words, if an individual possesses no controlled substances while he is carrying a gun, he cannot be charged and convicted under § 5-74-106. In sum, there is nothing overlapping or vague about §§ 5-73-120 and 5-74-106, since they concern two separate and different crimes.

■ Under this point, Johnson also urges that § 5-74-106 violates the Second Amendment to the United States Constitution, which permits citizens to bear arms. He argues the language in § 5-74-106 fails to specify what conduct is prohibited. The statute, however, clearly prohibits possessing a firearm while at the same time possessing illegal drugs. There is nothing misleading or vague about what type of conduct is banned by the statute, and therefore, we uphold the statute's constitutionality.

Johnson argues in his sixth point that the prosecutor made three improper closing remarks to the jury. During the guilt phase, the prosecutor said the following:

> Now this firearm, and you can see they've arranged it so the slide won't work, but it was not only possessed, it had — look at these bullets. You folks that hunt, get back there and say, why would you have a pistol bullet like that? Look at them with that hole in them. That's made for one thing, that's to tear apart human flesh, make a great big hole, and this gun was loaded with these bullets, this clip, and one was in the chamber. He had it ready so he could kill somebody with it. That's the only reason for having a gun like that behind the seat loaded.

Basically, Johnson contends that the foregoing remarks were not substantiated by the record and the trial court erred in overruling Johnson's objection to the remarks.

■ The rule is well established that a trial court has wide discretion in controlling, supervising, and determining the propriety of counsel's arguments, and this court will not reverse absent a showing of manifest abuse. *Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1994). Some leeway must be extended in closing

arguments, and counsel may argue every plausible inference that can be drawn from the evidence. *Id.* Here, the prosecutor, quite properly we conclude, argued that the type gun and bullets found in Johnson's car were designed to kill human beings. Consequently, we hold the trial court did not abuse its discretion when ruling this was proper argument by the prosecutor.

▮ Johnson's second objection went to the prosecutor's comment in the sentencing phase referring to the "horrors" of children using drugs, and arguing Johnson, as a police officer, was selling "poison" in this community. At trial, Johnson objected to the statement as a reference to prior criminal acts. On appeal, however, Johnson changes his argument, claiming the prosecutor had made an improper "Golden Rule" argument. Because Johnson did not make this argument to the trial court, he cannot do so now on appeal. *Scroggins,* 312 Ark. at 115.

▮ Finally, again in the sentencing phase, Johnson argues the trial court erred after the prosecutor said, "When we go to war against the enemies of this nation, we go to kill, we go to destroy." Johnson urges that, while the trial court sustained his objection to these closing remarks of the prosecutor, and admonished the jury to disregard them, the trial court erred when it declined to grant a mistrial. However, Johnson offers no citation to authority and makes no argument to show why a mistrial should have been granted in these circumstances. As a result, we need not consider his claim. *Roberts v. State,* 324 Ark. 68, 919 S.W.2d 192 (1996).

In his final argument, Johnson contends the trial court erred by admitting into evidence the tape recording and transcription of his confession because he was not provided with the transcription during discovery. Johnson avers he was not able to compare the transcript with the tape prior to trial. However, the record shows Johnson was aware that copies of the transcription were available at Officer Poe's office, but that he failed to avail himself of them.

▮ When a discovery violation occurs, the error is reversible only when the violation results in prejudice to the appellant. *McNeese v. State,* 326 Ark. 787, 935 S.W.2d 246 (1996). The burden is on the appellant to establish that the omission was sufficient

to undermine confidence in the outcome of the trial. *Bray v. State*, 322 Ark. 178, 908 S.W.2d 88 (1995). Johnson has not alleged that there was any discrepancy between the transcript and the tape, nor has he shown that he was harmed by the omission. As Johnson has failed to demonstrate any prejudice, he cannot prevail on this issue.

In sum, Johnson has failed to show the trial court committed reversible error. Accordingly, we affirm.