Curtis ASHLOCK *v.* STATE of Arkansas

CA CR 98-157 983 S.W.2d 448

Court of Appeals of Arkansas
Division II
Opinion delivered December 16, 1998

254

*Robert C. Marquette*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Curtis Ashlock appeals from his convictions of kidnapping and rape in Crawford County Circuit Court on July 11, 1997. He argues on appeal that: 1) the trial court erred by failing to declare a mistrial when a witness volunteered evidence of other bad acts; 2) the trial court erred by failing to declare a mistrial when a juror, less than one hour into deliberations, reported an inability to be impartial; 3) the court erred by failing to declare a mistrial after a juror became ill and was unable to continue deliberations; and, 4) the trial court erred by usurping the role of the jury in determining sentence. We disagree and affirm.

After her work shift ended on the morning of August 28, 1996, and she missed her ride home, RKP began walking along Interstate 40 in Shawnee, Oklahoma, toward her home. Ashlock offered RKP a ride. She accepted. When he stopped at the McLoud exit, Ashlock asked RKP to help him remove a vacuum cleaner from the back of the truck's cab. When she attempted to remove the item, Ashlock struck her repeatedly, threatened her with a knife, bound her with duct tape and rope, covered her mouth and eyes, and left her on a mattress in the back of the cab. Ashlock then drove from Oklahoma to Utah, Idaho, and Wyoming. During this trek, Ashlock forced RKP to perform various sex acts and tied her up between each incident. On various occasions the two were around other parties, including a brief encoun-

ter with a police officer after Ashlock was stopped for a traffic violation. RKP was also left alone at times but did not attempt to escape or cry for help. She testified that she did not attempt escape because of threats that Ashlock made against her and her family. Ashlock eventually returned to Arkansas where they switched from his truck to a car and he forced her to have sex with him again while blindfolded and bound. He then took her to the Arkansas River, forced her underwater, threw rocks at her, and left her in the river.

RKP managed to make her way to the bank of the river and work her hands free. She hid in soybean fields until she found a dwelling where other persons took her to the nearest hospital. There, RKP discovered that she was in Van Buren, Arkansas, and told police what had transpired. Based on these facts, Ashlock was charged with attempted capital murder, kidnapping, and rape.

The jury found Ashlock guilty of kidnapping and rape on July 11, 1997. Before the jury could reach a verdict on the charge of attempted capital murder one juror became ill, so a mistrial was declared on that charge on July 14, 1997. Over appellant's objection, the court dismissed the jury and sentenced Ashlock to fifty years' imprisonment on the kidnapping charge and sixty years' imprisonment on the rape charge, with the sentences to be served consecutively.

### Testimony of Appellant's Prior Time in Prison

After Ashlock returned to Arkansas with RKP, Officer Ron Brown of the Alma Police Department stopped him on September 1, 1996, for a traffic violation. During direct examination by Ashlock's counsel, Officer Ron Brown testified that Ashlock talked about time he spent in prison during the traffic stop. The questioning proceeded as follows:

> Q: Obviously, there was nothing in this meeting or confrontation, there was nothing in this time or during your conversation with Mr. Ashlock, out of the ordinary, as far as you said in your report, or made any notion about [—]

> A: The only unordinary thing, was when I asked him about his papers on his vehicle, he told me and we talked about the

form at a traffic stop is for a warning — it was kind of a lengthy traffic stop and we just engaged in conversation. He told me he had spent ten years of his life in prison, and that he was —

Counsel objected, and requested that the court instruct the jury to ignore and disregard the comment about Ashlock's prison record, stating that he was "not going to suggest that this witness had [made] that comment on purpose." The trial court agreed and instructed the jury to disregard the comment. After Officer Brown completed his testimony, Ashlock moved for a mistrial. Now Ashlock argues that the trial court committed reversible error by denying his motion.

 Rule 404(b) of the Arkansas Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." The trial court is given discretion in admitting or rejecting these matters, to be reversed on appeal where there is a manifest abuse of discretion. *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996); *Jarrett v. State*, 310 Ark. 358, 833 S.W.2d 779 (1992). A mistrial is a drastic remedy, which should only be used when the error is so prejudicial that justice cannot be served by an admonition. *Id.* Motions and objections must be made at the time the objectionable matter is brought to the jury's attention, or they are otherwise waived. *Johnson v. State*, 325 Ark. 197, 926 S.W.2d 837 (1996).

 Here, Ashlock argues that Officer Brown's testimony was prohibited by Rule 404 and that an admonition was insufficient. However, the motion was not made until after the witness completed his testimony having been cross-examined and even questioned further on redirect. Thus, Ashlock's motion for mistrial was untimely. We also hold that the motion was waived when appellant asked for an admonition and nothing more at the time of the objection.

### The Impartial Juror

Less than an hour into deliberations, the jury foreman sent the judge a note that read: "We have one juror [sic] that after

seeing people in the court room, feels like they cannot be impartial." The trial judge expressed to counsel a desire to conduct an inquiry of the jury, but counsel for Ashlock stated that he was opposed to an inquiry until after deliberations ended, rather than before further deliberations occurred. Accordingly, the trial judge did not investigate but admonished the jury as follows:

> Well, ladies and gentlemen, of course you've gone through the *voir dire* process. You have been accepted as jurors. You have taken an oath to follow the law and the evidence. It's a little bit late at this hour to begin talking about being impartial. You have agreed to be impartial by being accepted on the voir dire process. You will need to go and deliberate.

The jury then retired for deliberations.

■ ■ It is clear that when a juror admits inability to remain impartial the integrity of the trial process is called into question. "Nothing can destroy the integrity of juries more effectively than to allow prejudiced jurors to sit in a case." *Rhoden v. Stephens*, 239 Ark. 998, 1000, 395 S.W.2d 754, 755 (1965) (quoting *Anderson v. State*, 200 Ark. 516, 139 S.W.2d 396 (1940)). The Arkansas Supreme Court has stated:

> Courts and Judges must always see that every person receives a fair and impartial trial before a fair and impartial jury. The Courts are the last bulwark of freedom and justice.

*Smith v. State*, 227 Ark. 332, 340, 299 S.W.2d 52, 56 (1957). The appellant is entitled to a trial by twelve impartial and unprejudiced jurors who base their decision on the evidence as presented at trial. *Borden v. St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985). When actual bias, as opposed to implied bias, is called into question, the qualification of the juror is within the discretion of the court, because the trial judge is "in a better position to weigh the demeanor of the prospective juror's response to the questions on voir dire." *Boyd v. State*, 318 Ark. 799, 803, 889 S.W.2d 20, 22 (1994); *see Barker v. State*, 21 Ark. App. 56, 728 S.W.2d 204 (1987). The test is whether "the prospective juror can lay aside his impression or opinion and render a verdict based upon the evidence in court." *Breedlove v. State*, 62 Ark. App. 219,

223, 970 S.W.2d 313, 315 (1998). The trial court's decision will not be reversed absent an abuse of discretion. *Id.*

■ ■ Here, the juror was not polled or questioned by the judge to determine whether the report of bias or prejudice was unfounded or, if founded, could be set aside. However, this failure to investigate the source of the reported juror bias resulted from the appellant's refusal to accept the trial court's offer to investigate, and not from the court's failure to protect appellant's right to a fair trial. Ashlock now claims that the trial court's acquiescence in his position was reversible error, and that the trial court erred by not declaring a mistrial after the jury returned adverse verdicts. Having received all the relief requested, Ashlock cannot complain on appeal that he did not receive a fair trial. *See Noel v. State,* 331 Ark. 79, 960 S.W.2d 439 (1998). Appellant cannot seriously argue that the court was under a duty to investigate the jury bias regardless of his request, as there is no plain-error rule in Arkansas. *Duncan v. State,* 38 Ark. App. 47, 828 S.W.2d 847 (1992). We certainly do not hold that the court abused its discretion by denying the motion for mistrial where appellant objected to an investigation of reported juror bias during the trial.

*Juror Sickness*

During jury deliberations one juror began suffering cardiac distress. After medical personnel were sent into the jury room to attend that juror, the following exchange took place:

| THE COURT: | It has been reported to this court that this [juror] is in need of medical attention . . . For now I am going to continue this until Monday at 9:00 a.m. and then we will make an inquiry at that time as to her health. . . |
| --- | --- |
| MR. MARQUETTE (*Counsel for Ashlock*): | Your Honor, we would request at this time with the juror having an indication of cardiac arrest or cardiac problems and being removed to the hospital, that the Court grant a mistrial in this matter and declare a hung jury. |

THE COURT: Well, I am going to make an inquiry and see what her health is on Monday and we may well do that.

The foreman indicated that a verdict had been reached on the kidnapping and rape counts before the excused juror became ill. When the foreman indicated that a verdict was reached on the kidnapping count, the court asked counsel if there were any questions about the verdict. Appellant's counsel asked if the verdict was agreed to by all twelve jurors, to which the foreman responded, "Yes, it was." Appellant's counsel did not ask any questions about the verdict of guilty on the count of rape. Appellant's counsel made no objection when the trial court accepted the State's suggestion that the verdicts be accepted on the first two counts and the case continued on the third. Now Ashlock argues that the trial court committed reversible error by refusing to declare a mistrial and by accepting the guilty verdicts.

██ ██ Arkansas Code Annotated § 16-89-126(a) (1987) states:

> When the jury has agreed upon their verdict, they must be conducted into court by the officer having them in charge, their names called by the clerk, and, if they appear, their foreman must declare their verdict.

Although the statute appears to mandate that the verdict be delivered by the foreman if all members of the jury appear in court, appellant did not raise the statutory noncompliance issue below and his counsel did not request that the jurors be polled. Appellant's motion for mistrial was based solely upon the juror's sickness and was made before the verdicts were read and accepted. The appellant may not voice a general objection, but must make a specific objection in order to preserve an issue for appeal. *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998). This is so that the trial court may be apprised of the nature of the error of which the appellant complains. *Christian v. State*, 54 Ark. App. 191, 925 S.W.2d 428 (1996). Appellant's mistrial motion was not based upon the failure to follow statutory procedures. His argument was not raised below and will not be considered for the first time on appeal. *See Beyer v. State*, 331 Ark. 197, 962 S.W.2d 751 (1998).

*Trial Court's Imposition of Sentence*

After the guilty verdicts on the rape and kidnapping counts were read and accepted, the court recessed until the following Monday to determine whether the excused juror would be able to resume deliberations. When court resumed, the trial judge announced that the stricken juror would not be able to continue in deliberations. The trial judge then discharged the jury and proceeded to the sentencing phase. Appellant objected by renewing his motion for mistrial based on the sick juror, arguing that the jury had not deliberated on the sentence and become deadlocked or unable to impose sentence. The court did not rule on the objection, and simply stated, "All right, let's proceed." The State argued that, under both statutory and case law, Arkansas allows for the court to impose sentence. Again, the court stated, "All right, let's proceed."

██ ██ Initially, it should be noted that there is no constitutional right to be sentenced by a jury; furthermore, sentencing is strictly controlled by statute. *Scherrer v. State*, 294 Ark. 227, 742 S.W.2d 877 (1988); *see Tharp v. State*, 294 Ark. 615, 745 S.W.2d 612 (1988). The statute in Arkansas allows for the court to impose punishment when

> a jury finds a verdict of guilty and fails to agree on the punishment to be inflicted, or does not declare the punishment in its verdict, or if it assesses a punishment not authorized by law, and in all cases of a judgment on confession[.]

Ark. Code Ann. § 16-90-107(a) (1987); *see* Ark. Code Ann. § 5-4-103 (1987). In *Johnson v. State*, 328 Ark. 526, 944 S.W.2d 115 (1997), our supreme court held that where a jury found the defendant guilty but was unable to agree on punishment, the trial court correctly exercised its statutory authority under Ark. Code Ann. § 5-4-103(b), to fix punishment. Furthermore, the court stated in *Johnson* that it would consider a jury "deadlocked" (thus allowing the court to impose sentence) when one juror was tainted by prejudicial information or was unable to be impartial. The court based its decision on *Ladwig v. State*, 328 Ark. 241, 943 S.W.2d 571 (1997), when only eleven jurors agreed on a forty-year sentence and one wanted a life sentence.

In this case, appellant objected to the trial court's imposing sentence. Even so, the statute clearly authorized the court to fix punishment. There would have been no difference whether the excused juror had been present for sentencing and disagreed with the others, or if the jury, as here, agreed on the guilty verdicts but did not set punishment.

Affirmed.

PITTMAN and BIRD, JJ., agree.