Diana LANCASTER and Michael Kehn *v.* STATE of Arkansas

CA CR 02-849                                   105 S.W.3d 365

Court of Appeals of Arkansas
Division III
Opinion delivered April 23, 2003

*McCullough Law Firm*, by: *R.S. McCullough*, for appellants.

*J. Leon Johnson*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

JOHN F. STROUD, JR., Chief Judge. Upon the trial court's denial of their prehearing motions to suppress, Diana Lancaster and Michael Kehn entered conditional pleas of guilty, pursuant to Rule 24.3 of the Arkansas Rules of Criminal Procedure, to the offenses of manufacture of a controlled substance (marijuana), possession of marijuana with intent to deliver, and possession of drug paraphernalia with intent to deliver. They were each sentenced to five years' probation; Lancaster was assessed a $2500 fine and Kehn was ordered to pay a $5000 fine. The cases were consolidated for purposes of appeal. Appellants argue that the trial court erred in denying their motions to suppress because the police officers had no probable cause to be on their property and therefore had no legitimate basis for the issuance of a search warrant; they further argue that the search warrant was invalid because it was issued by an "improper magistrate." We affirm.

When reviewing the trial court's denial of a motion to suppress, this court makes an independent determination based on the totality of the circumstances. *Embry v. State*, 70 Ark. App. 122, 15 S.W.3d 367 (2000). The appellate court will reverse a denial of a motion to suppress only if the trial court's ruling was clearly against the preponderance of the evidence. *Id.*

At the hearing on the motion to suppress, Investigator Afton Fletcher of the drug task force testified that in May 2001 he was assisting probation officer Curt Decker in attempting to locate one of Decker's probationers, Terry Copeland. The officers were unsure where Copeland was living, so they were going from house to house asking residents if they knew Copeland or where he

lived. When the officers came to appellants' driveway about 12:15 p.m., they pulled in; Fletcher stated that the house could not be seen from the road.

Appellant Lancaster came outside when the officers pulled up, and they asked her if she knew where Copeland lived. Fletcher said that the officers did not suspect any criminal activity on Lancaster's part at that time. However, Lancaster began telling the officers about people who were shooting guns in the woods behind her house. When asked where, Lancaster pointed to the rear of her house. When she pointed, Fletcher said that he saw a garden with a rail fence around it behind her house toward an outbuilding; Fletcher said that he could see marijuana plants between the fence rails. The marijuana was in boxes approximately four-feet wide and eight-feet long, and the plants looked to have been freshly watered. When asked about the plants, Lancaster said "where"; when Lancaster and the officers walked over to the garden, Lancaster asked "where" again, and Fletcher told her, "right there." Lancaster then became upset, said that marijuana should be legal, and started toward the house. The officers followed Lancaster to the front porch, where Fletcher advised her of her Miranda rights. Fletcher asked if they could search the house, which Lancaster refused. As Lancaster attempted to open the door and go inside, Fletcher heard dogs inside the house; he then pulled her back out onto the porch, shut the door, and told Lancaster that she was under arrest. Lancaster was transported to jail while the officers secured the scene and Fletcher obtained a search warrant. Fletcher testified that appellant Kehn arrived at the house during the execution of the search warrant; he was told what the officers were doing and was advised of his Miranda rights. Kehn denied knowledge of how the plants got onto his property.

Probation officer Curt Decker testified that in May 2001 Investigator Fletcher and Deputy Burnett were assisting him in searching for Terry Copeland, one of his probationers. He said that he had not heard from Copeland in over a month, and there was some question as to whether he was living in that area or if he had moved to Batesville. Decker said that he did not know where Copeland was, and on that day they were simply going from house to house attempting to locate him. He said that they had stopped at a number of residences to ask if anyone knew where Copeland

lived or had any idea where to find him, but they had no leads. He said that when they turned into the appellants' property, they had "no idea" who lived there, but that they were just trying to locate Copeland or some information on him. Decker recognized Lancaster when she came outside, and she began telling the officers about gunshots and pointing toward the back of her house. Decker said that was when Fletcher noticed something and began asking Lancaster questions and walking toward the garden. He said that once the marijuana plants were pointed out to him, he could see the tops of them from where he had been standing.

■ Appellants contend on appeal that the officers had no reason to be on their property and therefore their motions to suppress should have been granted. Appellants cite no authority in their brief for this argument, and this alone is grounds to affirm the trial court's ruling. This court will not consider an argument when the appellant presents no citation of authority or convincing argument in its support and it is not apparent without further research that the argument is well taken. *Hollis v. State*, 346 Ark. 175, 55 S.W.3d 756 (2001).

■ Nevertheless, the trial court did not err in denying appellants' motions to suppress. Appellants complain that the officers had no reason to come onto their property because they did not have any information that the probationer for whom they were searching was on appellants' property. There is nothing in the Constitution that prevents the police from addressing questions to any individual. *Jefferson v. State*, 349 Ark. 236, 76 S.W.3d 850 (2002). The Fourth Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable. *Burdyshaw v. State*, 69 Ark. App. 243, 10 S.W.3d 918 (2000). Police officers in *Burdyshaw*, acting upon an anonymous tip that a methamphetamine lab was on the premises, drove up the appellant's driveway to ask him if they could search the residence, and appellant's father gave written consent. In upholding the trial court's denial of appellant's motion to suppress the evidence obtained in the search, this court held that the expectation of privacy in driveways and walkways that are commonly used by visitors to approach dwellings is generally not considered reasonable; however, the question of whether a driveway is protected from entry by police officers is

dependent upon the circumstances, with reference to factors such as accessibility and visibility from a public highway. In that case, this court was persuaded by the rationale set forth in *United States v. Ventling*, 678 F.2d 63, 66 (8th Cir. 1982):

> The absence of a closed or blocked gate in this country creates an invitation to the public that a person can lawfully enter along the driveway during daylight hours to contact the occupants for a lawful request and if the request is refused to leave by the same way. The presence of "no trespassing" signs in this country without a locked or closed gate makes the entry along the driveway for the purposes above described not a trespass and therefore does not constitute an intrusion prohibited by the Fourth Amendment.

This court further stated, "If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so." *Burdyshaw*, 69 Ark. App. at 248, 10 S.W.3d at 921 (citing *Oregon v. Corbett*, 516 P.2d 487, 490 (1973)).

■ The facts of the present case are less intrusive than the facts found in *Burdyshaw*. Here, the officers were not requesting permission to search appellants' premises; they were lawfully seeking assistance in locating a missing probationer when they came to appellants' unblocked driveway and proceeded to their house to inquire if appellants knew the whereabouts of Copeland. We hold that there was no violation of appellants' Fourth Amendment rights when the officers drove up their driveway to their house, and the trial court did not err in denying the motions to suppress.

■ Appellants also contend that the search warrant was invalid because it was issued by an "improper magistrate." The search warrant was presented to and signed by Izard County District Judge Dewayne Lawrence, although the officers were from Stone County and appellants' property was located in Stone County. Investigator Fletcher testified that the warrant was presented to Judge Lawrence because he was the only judge available at the time, and he understood that Judge Lawrence and Adam Harkey, the Stone County District Judge, had an exchange agreement with each other.

Appellants now argue that this jurisdiction-exchange agreement was invalid pursuant to Arkansas Code Annotated section

16-17-102 (Repl. 1999). However, Arkansas Code Annotated section 16-17-102 has no application to this case: that statute concerns the exchange of jurisdiction of district court judges, formerly municipal court judges, to enter into agreements that authorize such judges to sit as judge in each other's districts.

■ ■ The statute applicable to the present case is Arkansas Code Annotated section 16-82-201(a) (Supp. 2001), which provides, "A search warrant may be issued by any judicial officer of this state only upon affidavit sworn to before a judicial officer which establishes the grounds for its issuance." This precise issue was addressed by our supreme court in *Brenk v. State*, 311 Ark. 579, 847 S.W.2d 1 (1993). In that case, the appellant argued that a search warrant was invalid because a Marion County municipal judge had signed the warrant for Baxter County without a written agreement pursuant to Ark. Code Ann. § 16-17-206. In rejecting this argument, the supreme court held:

> Appellant's construction would have us limit the ability of a judge to issue a warrant to affect only property in the county in which the judge has jurisdiction. Section 16-17-206 is not applicable. The statute which controls a judicial officer's ability to issue a search warrant is Ark. Code Ann. 16-82-201 (1987). It provides in pertinent part: "A search warrant may be issued by any judicial officer of this state only upon affidavit sworn to before a judicial officer which establishes the grounds for its issuance." Ark. Code Ann. 16-82-201(a). The applicable statute does not give any indication that the jurisdiction of a judicial officer in issuing search warrants is limited to the county in which the judicial officer was elected or appointed. In fact, it expressly provides that a search warrant may be issued by any judicial officer. We refuse to find that judicial officers are limited to issuing search warrants only in the counties in which they were elected or appointed and, therefore, find that the search warrant issued by Judge Bearden was valid.

311 Ark. at 590-91, 847 S.W.2d at 7. In light of the *Brenk* holding, appellants' argument that the warrant was invalid must fail.

Affirmed.

ROBBINS and CRABTREE, JJ., agree.