James Everett NELSON *v.* STATE of Arkansas

CA CR 04-1289 212 S.W.3d 31

Court of Appeals of Arkansas
Opinion delivered September 7, 2005

*Ray Bunch*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. James E. Nelson was convicted of possession of drug paraphernalia with intent to manufacture methamphetamine and illegal possession of pseudoephe-

drine in a jury trial and was sentenced as an habitual offender to fifty years' imprisonment. On appeal, Nelson argues that (1) the trial court erred in denying his motion to suppress evidence; (2) substantial evidence does not support his convictions; and (3) the trial court erred by allowing the State to introduce his fourteen-year-old prior methamphetamine-related convictions during the guilt phase of his trial pursuant to Ark. R. Evid. 404(b). We agree that the trial court erred in admitting the prior convictions, and reverse and remand.

After being charged, Nelson filed a motion to suppress evidence obtained during a search of the vehicle he was driving. The following was established at the suppression hearing.

On November 4, 2002, Officer Daniel Robbins observed a silver Ford Taurus pull into the Wal-Mart parking lot in the early a.m. hours. One of the occupants went into Wal-Mart for approximately ten minutes. Robbins drove past the vehicle and noticed that it had a cracked windshield. Robbins parked his patrol car across the street from Wal-Mart and observed the car leaving the parking lot at approximately 3:30 a.m. The driver failed to stop at the stop sign as he exited the Wal-Mart parking lot. Robbins testified that the driver's failure to stop at the stop sign raised his suspicion and that he had planned to at least stop the car and confront the driver about running the stop sign. He also noted during his testimony that a person sitting in a vehicle in a Wal-Mart parking lot at 3:30 a.m. raised his suspicions because he regularly received calls about people going into Wal-Mart to purchase items to manufacture methamphetamine. He admitted, however, that he did not know he would find any such items in Nelson's car and claimed that he was not searching for methamphetamine. While following the vehicle, Robbins ran the license plate, and the tags did not return to the vehicle; Robbins initiated a traffic stop.

Robbins discovered that Nelson was the driver of the vehicle and that Kurt Stanley was the passenger. There was also a bulldog in the back seat. Robbins asked Nelson for his driver's license, registration, and proof of car insurance. Robbins testified that Nelson was nervous and that his hands were shaking as he retrieved his driver's license from his wallet. Nelson could not locate the proof of insurance. At that time, Robbins asked Nelson to step out of the vehicle, arrested him for "no insurance," placed Nelson in handcuffs, and escorted him to his patrol car. Robbins admitted that although he sometimes arrests for failure to provide proof of insurance, most of the time he only writes a citation. He

also admitted that Nelson had told him that the vehicle belonged to his mother, and provided her telephone number. While placing Nelson in the patrol car, Robbins asked whether he had any drugs, weapons, or anything illegal in the vehicle. Nelson said that he did not, and Robbins asked whether Nelson "would care if we took a look." According to Robbins, Nelson either said, "he didn't care," "okay," or "yes," but Robbins could not be certain that Nelson used the word "yes." Robbins stated that he took Nelson's response as "yes you can search the vehicle." Robbins stated that it was not possible that Nelson said he did mind if he searched the car. Robbins further stated:

> I am not saying that the reason I searched the car was because Mr. Nelson gave me permission to search it. Any time we make an arrest out of a vehicle, whether it be the passenger's side or the driver's side — I arrested the driver from the vehicle and I had probable cause to search the scope of his area.

Robbins returned to the vehicle and instructed Stanley to take the dog out of the vehicle and wait until Animal Control could arrive and remove the dog. Officer Christopher Webber waited with Stanley and the dog until Animal Control arrived twenty or thirty minutes later, and the dog was taken away.

After Animal Control left, Robbins and Webber began a search of the vehicle. Behind the driver's seat, Robbins found a plastic Wal-Mart bag containing a juice bottle with white pills inside, a torn Actifed package, two bottles of Heet, a propane bottle, two Wal-Mart receipts, one dated the same day as the traffic stop and another dated the day before, and twenty-five feet of clear plastic tubing. On the passenger-side visor, he located a Marlboro cigarette box with the lid taped shut. Robbins removed the tape and found more white pills. At that point, Stanley was arrested and was placed in Webber's patrol car. During the search, Webber found the vehicle's proof of insurance on the floor mixed in with other papers. After the search, Nelson and Stanley were transported to the police station. No further inventory search was conducted, and the vehicle was locked and left on the Wal-Mart parking lot. Nelson's mother was called and notified that she could come and retrieve her vehicle.

Nelson testified that he was on his way to visit his fiancée and that he had given Stanley a ride from Rogers to the Farmington Exit in Fayetteville. He stated that Stanley wanted to stop by

Wal-Mart; that he did not know why Stanley wanted to go to Wal-Mart; and that, until the search, he did not know what was in the Wal-Mart bags. Nelson denied running the stop sign. Nelson said that he was immediately arrested once he told Robbins that he could not locate the insurance papers, even though he had explained that the car belonged to his mother and that he was only borrowing it. He also said that he never gave Robbins consent to search the vehicle and that, when asked whether he would mind if the officers took a look inside his vehicle, he replied, "Sure do."

In denying the motion to suppress, the trial court noted that probable cause supported the stop because Robbins observed a violation of the traffic laws in his presence. The trial court also found that the search was a proper consent search, crediting the officer's testimony against Nelson's as the person most interested in the outcome of the case.

On April 22, 2003, another pretrial hearing was held regarding the admissibility of Nelson's prior convictions. The State sought permission to introduce prior convictions for possession of methamphetamine, illegal delivery of methamphetamine, and possession of drug paraphernalia. The offenses occurred in 1987, and the convictions were entered on November 18, 1988. The State argued that the prior convictions were independently relevant to show intent, plan, preparation, knowledge, and absence of mistake. Regarding the age of the convictions, the State argued that remoteness of time is merely one factor for the trial court to consider under the 404(b) balancing test and that, in this case, the probative value of the prior convictions was not substantially outweighed by any prejudicial effect, even considering the remoteness of time. Nelson objected to the admission of the prior convictions, arguing that, due to their remoteness, they were not independently relevant and that the prejudicial effect far outweighed any probative value. Nelson argued that the effect of admitting the convictions would be to prove that he had bad character. The trial court ruled that the prior convictions for possession of methamphetamine and for delivery of methamphetamine were admissible to show intent, knowledge, and lack of mistake.

During the trial, Officer Robbins's testimony was substantially the same as his testimony at the pretrial hearing on the motion to suppress. The contents of the Wal-Mart bag and the Marlboro Ultra Lights cigarette box containing the white pills were admitted into evidence, during his testimony. Robbins

testified that those items were associated with manufacturing methamphetamine and that the number of pills found in the car exceeded the legal limit for possession of psuedoephedrine. The police report indicated that there was a total of 497 pills.

The two Wal-Mart receipts were also entered into evidence. One of the receipts showed purchases made at the Rogers Wal-Mart on November 3, 2002, at 11:30 p.m., and the other receipt showed purchases made at the Fayetteville Wal-Mart on November 4, 2002, at 2:40 a.m. The receipt for November 3 showed purchases for paper towels, toilet paper, and light bulbs; however, the receipt did not show a purchase for the juice, and none of the other items from the receipt were found during the search.

Officer Webber's trial testimony was also similar to his pretrial testimony. He testified that, based on his experience and training, the items recovered during the search can be used to make methamphetamine. He also stated that the items could be considered drug paraphernalia, but he admitted that all of the things found had legitimate uses.

Jeff Bruce, a forensic chemist for the Arkansas State Crime Lab, testified that he received the juice bottle and that it contained two types of pills. He testified that each pill contained sixty milligrams of pseudoephdrine, and that there was a total of 310 pills in the juice container, which amounted to approximately 18.6 grams of psuedoephedrine. Bruce testified that the Marlboro cigarette box also contained two different types of pills. There was a total of 186 sixty-milligram tablets in the cigarette box, which amounted to approximately 11.1 grams of pseudoephedrine. The total amount of pseudoephedrine recovered from the two State's exhibits was 29.7 grams. According to Bruce's testimony, pseudoephedrine is precursor that can be converted into methamphetamine by extraction. He admitted that the ephedrine pills could be used for a sinus cold, but stated that no one would use 29.7 grams at one time to treat a sinus cold.

Detective Mike Henderson testified on behalf of the State about the process used to make methamphetamine from pseudoephedrine and about the use of the other items found in the car. Henderson explained that Wal-Mart has become active in identifying people who purchase items that may be used to manufacture methamphetamine. As a result, persons seeking to purchase these items either purchase a few and then wait a while before returning to purchase more, or visit more than one Wal-Mart in an effort to escape detection by Wal-Mart's employees.

Following Henderson's testimony, the trial court admitted State's Exhibit Eleven, entitled "Prior Methamphetamine Convictions of Jimmy Nelson" into evidence, and the State rested. Nelson then moved for a directed verdict on both counts, arguing that the State had failed to prove the elements of possession of drug paraphernalia with intent to manufacture and, as to the possession of pseudoephedrine, the State failed to prove that he possessed the pills. His motion was denied, and Nelson raised an objection to the jury instruction setting out accomplice liability. This motion was also denied.

Florence Morrison testified on Nelson's behalf. She testified that she was his fiancée and that she was expecting Nelson sometime around 4:30 a.m., that she did not know Kurt Stanley, and that he and Nelson did not have a relationship. Layvon Clark, Nelson's mother, testified that the Ford Taurus that Nelson was driving on the night of his arrest belongs to her and her boyfriend. She said that she rarely drove the car, and that her boyfriend used it most of the time. She stated that she had loaned the car to several other people in November 2002, including Wayne Beck who, according to Clark, is currently incarcerated for methamphetamine-related crimes. She denied that she owned the items seized during the search of her car.

Nelson testified on his own behalf. He testified that he was familiar with Stanley, but that they were not friends. He said that Stanley had asked for a ride to Fayetteville, and that he agreed to give him a ride because he was planning on visiting his fiancée in Fayetteville the next day. Nelson stated that Stanley had a backpack that was present in his car during their ride to Fayetteville and that it contained Stanley's tools and a propane tank that he carried around with him. The backpack was admitted into evidence during Nelson's testimony. Nelson stated that, when he picked Stanley up in Rogers, Stanley said that he needed to go to Wal-Mart. Nelson testified that he did not enter the store with Stanley and that he did not know what Stanley purchased. Nelson said that, when Stanley returned to the car from the Wal-Mart in Rogers, he had four or five Wal-Mart bags and that he just threw them on the back-seat floorboard. During this testimony, counsel for Nelson showed him a check apparently written to the Rogers Wal-Mart for the items that were identified on the receipt from that location. Nelson testified that the check did not belong to him and that he did not write the check.

When they arrived in Fayetteville, Stanley told Nelson that he was not able to get something that he needed from the Rogers Wal-Mart, and Nelson took him to the Wal-Mart in Fayetteville. Nelson testified that he sat in the car while Stanley went into the store and that he did not know what Stanley had purchased. Nelson said that as the two were leaving Wal-Mart, he was pulled over by the police. Nelson said that, until the police found the juice container with the pills and the other items found in the car, he had never seen them before, and that the items did not belong to him. On direct examination, Nelson admitted that he had pled guilty to three charges involving methamphetamine in 1988 and was sentenced for those crimes.

After Nelson rested, he renewed his directed-verdict motions, which were denied, and the State recalled Officer Robbins, who testified that he had not seen the backpack that was admitted into evidence during Nelson's testimony on the night he searched the vehicle. He also stated that he did not find several Wal-Mart bags and that he did not find any paper towels, toilet paper, dish soap, or any of those items that were on the Rogers Wal-Mart receipt in the car. Following this testimony, Nelson renewed his directed-verdict motions, which were again denied. The jury returned a guilty verdict on both counts, and Nelson appeals.

 On appeal, Nelson challenges the sufficiency of the evidence supporting his convictions. Although he raises these arguments as his second point on appeal, preservation of Nelson's freedom from double jeopardy requires us to examine his sufficiency arguments before addressing trial errors. *Brown v. State*, 74 Ark. App. 281, 47 S.W.3d 314 (2001). A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003). On appeal from a denial of a motion for directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* Only the evidence supporting the guilty verdict need be considered, and the evidence is viewed in the light most favorable to the State. *Id.* It is well-settled that matters of credibility are within the sound province of the jury and will not be disturbed on appeal. *Johnson v. State*, 71 Ark. App. 58, 25 S.W.3d

445 (2000). Further, it is for the jury to resolve matters of inconsistencies in a witness's testimony. *Id.*

The record and abstract show that Nelson failed to make a proper directed-verdict motion. Arkansas Rules of Criminal Procedure 33.1(a) and (c) (2004) govern the procedure for challenging the sufficiency of the evidence at a jury trial. Rule 33.1(a) requires that the motion for directed verdict shall state the specific grounds therefor, and Rule 33.1(c) provides that a motion must specify the respect in which the evidence is deficient.

Moreover, an appellant must make a specific objection that apprises the trial court of his current argument and may not change the argument on appeal. *Foreman v. State*, 328 Ark. 583, 945 S.W.2d 926 (1997). Absent such a specific objection informing the trial court of the nature of the error alleged on appeal, this court will not reverse. *Id.* Furthermore, general objections are not sufficient to apprise the trial court of the specific deficiency, and therefore, are not sufficient to preserve an issue on appeal. *Ashlock v. State*, 64 Ark. App. 253, 983 S.W.2d 448 (1998). Finally, this court will not consider arguments raised for the first time on appeal. *Simmons v. State*, 90 Ark. App. 273, 205 S.W.3d 194 (2005).

In his motion made at the close of the State's case, Nelson made only a general directed-verdict motion on the charge of possession of drug paraphernalia with intent to manufacture. Nelson stated "the State has not met the burden of the elements of that offense." On appeal, he argues in essence that because all of the items found had legitimate uses and because there was no methamphetamine residue or instructions for making the drug found, the conviction was based upon speculation and conjecture. However, the general motion made at trial was insufficient to apprise the trial court of any alleged deficiencies of the State's case, and we cannot address the merits of this argument on appeal. *Ashlock, supra.* Regarding the possession of pseudoephedrine charge, Nelson's motion merely stated that the State failed to prove "that Jimmy Nelson possessed those pills." Again, this general motion does not apprise the trial court of a specific deficiency. *Id.* On appeal, Nelson argues that the State failed to show constructive possession or accomplice liability. These specific arguments were not made to the trial court, and we thus do not consider them. *Simmons, supra.*

Nelson also argues that the trial court erred in denying his motion to suppress the evidence found in his car because the search violated his right to be free from unreasonable searches and seizures pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and Article 2 § 15 of the Arkansas Constitution.

When reviewing the trial court's denial of a motion to suppress, this court makes an independent determination based on the totality of the circumstances. *Lancaster v. State*, 81 Ark. App. 427, 105 S.W.3d 365 (2003). The appellate court will reverse a denial of a motion to suppress only if the trial court's ruling was clearly against the preponderance of the evidence. *Id.*

Nelson argues that the trial court erred in not finding that his arrest was pretextual and in failing to suppress the evidence obtained as a result of the pretextual arrest. In *Arkansas v. Sullivan*, 522 U.S. 769 (2001) (*Sullivan I*), the Arkansas Supreme Court had affirmed the suppression of evidence obtained as a result of pretextual arrest, rejected the State's argument that the holding in *Whren v. United States*, 517 U.S. 806 (1996) makes the "ulterior motives of police officers irrelevant so long as there is probable cause for the traffic stop," and denied the State's petition for rehearing. The Supreme Court accepted the State's petition for a writ of certiorari. *Id.*

The Supreme Court held that the Arkansas Supreme Court's decision was contrary to controlling precedent and reversed and remanded. The Supreme Court stated that its decision in *Whren* makes it clear that it will not entertain Fourth Amendment challenges based upon the subjective motivations of the officers. *Id.* The Court noted its decision in *United States v. Robinson*, 414 U.S. 218 (1973) wherein it stated, "a traffic-violation arrest . . . [will] not be rendered invalid by the fact that it was 'a mere pretext for a narcotic search.' " *Id.*

Accordingly, Nelson's challenge to his pretextual arrest under the Fourth and Fourteenth Amendments to the United States Constitution is without merit. Here, Robbins testified that he stopped Nelson because he ran a stop sign while leaving the Wal-Mart parking lot. Further, Nelson was unable to locate his proof of insurance when asked to do so, and was arrested for lack of proof of insurance. As stated in *Robinson, supra*, and reiterated in *Sullivan I, supra*, Nelson's traffic-violation arrest will

not be invalidated under the federal Constitution by the fact that it was a mere pretext for a narcotics search. *Sullivan I, supra.*

Nelson also refers to Article 2 § 15 of the Arkansas Constitution in the caption of his suppression argument. In *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002) (*Sullivan II*), on remand from the Supreme Court, our supreme court determined that, under Article 2 § 15 of the Arkansas Constitution, pretextual stops are unconstitutional. The supreme court noted that there is no longer a pretext inquiry under federal law, but concluded that it could interpret the Arkansas Constitution more broadly than the federal court interprets the federal constitution. *Id.* However, Nelson did not raise the issue of the Arkansas Constitutional protection to the trial court. In his motion to suppress, Nelson referenced only the Fourth and Fourteenth Amendments to the United States Constitution and the "Arkansas Rules of Criminal Procedure."

On appeal, he now contends that the search was not authorized under the Arkansas Rules of Criminal Procedure and was "therefore in violation of [Nelson's] State Constitutional rights." Nelson cites to Ark. R. Crim. P. 12.1 and 12.4 concerning warrantless searches of a person or vehicle incident to lawful arrest, but makes no argument regarding the Arkansas Constitution. However, the trial court found that Nelson consented to the search after a valid, custodial arrest, and did not rely upon the rules cited by Nelson. Although the officer also testified that he believed that he had authority to search the vehicle incident to arrest, he testified unequivocally that it was not possible that Nelson objected to the search. Here, the testimony of the officer and Nelson was in conflict, and the trial court determined that Officer Robbins was more credible than Nelson on the issue of whether consent was given. Conflicts in testimony are for the trial judge to resolve, and the judge was not required to believe any witness's testimony, especially that of the accused, since he has the most interest in the outcome of the proceedings. *Sanders v. State*, 76 Ark. App. 104, 61 S.W.3d 871 (2001).

For his final point on appeal, Nelson argues that the trial court erred when it permitted the State to introduce his prior convictions from 1988 in its case in chief. The general rule is that evidence of other crimes by the accused, not charged in the indictment or information and not a part of the same transaction,

is not admissible at the trial of the accused. *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003). It is axiomatic that evidence of prior misconduct is not admissible to show that the person on trial is a bad person and is therefore more likely to have committed the act in question. *Lindsey v. State*, 319 Ark. 132, 890 S.W.2d 584 (1994).

However, pursuant to Arkansas Rule of Evidence 404(b), evidence of other crimes may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, and identity, or absence of mistake or accident. *Smith, supra*; Ark. R. Evid. 404(b) (2004). To be admissible under Ark. R. Evid. 404(b), the evidence must be independently relevant to the issue at hand, meaning that the evidence must tend to prove some material point rather than merely to prove that the accused is a criminal. *Smith, supra*. Then the evidence may be admissible with a proper cautionary instruction by the trial court to the jury. *Id*. Once it has been established that the evidence has independent relevance, the inquiry does not end. The trial court must then perform the balancing test required pursuant to Arkansas Rule of Evidence 403. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403 (2004). That is, the probative value of the evidence must not be outweighed by the danger of unfair prejudice. The trial court has broad discretion in deciding evidentiary issues and those decisions will not be reversed absent an abuse of discretion. *Smith, supra*.

In *Cary v. State*, 259 Ark. 510, 534 S.W.2d 230 (1976), the appellant was convicted of possession with intent to deliver heroin. The information alleged that the offense occurred on January 10, 1974. *Id*. On appeal, the appellant argued that the trial court had erred in admitting testimony that he participated in marijuana sales on November 22, 1971; May 3, 1972; and December 20, 1973, because the first two were too remote in time from the date he was alleged to have committed the crime charged. *Id*. The supreme court stated, "The matter of remoteness is addressed to the sound judicial discretion of the trial judge, which will be interfered with by a reviewing court only when it is clear that the questioned evidence has no connection with any issue in the case." *Id*. at 514, 534 S.W.2d at 234. *See also Holloway v. State*, 293 Ark.

438, 732 S.W.2d 796 (1987) (upholding admission of prior bad acts that had occurred eleven months prior); *Lincoln v. State*, 12 Ark. App. 46, 670 S.W.2d 819 (1985) (upholding admission of prior bad acts that had occurred one year earlier).

We can find no relevant Arkansas case involving admission of prior convictions after a lapse of fourteen years as occurred in this case, notwithstanding the inapposite Arkansas case cited and relied upon by the dissent.[1] And, we are neither persuaded nor barred by the other precedent put forward in the dissent. Unlike Ark. R. Evid. 609, which involves the use of prior convictions for impeachment, Ark. R. Evid. 404(b) does not have a ten-year limit on the admission of such convictions. However, the underlying rationale behind the exclusion of such old convictions must also apply to Rule 404(b). While it is true that the admission of remote convictions has been left to the sound discretion of the trial court, *see Cary, supra*, since the adoption of Rule 404(b) our appellate courts have held that remoteness is a factor to be considered when determining the probative value of evidence of a prior crime. *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998) (holding that two years was not too remote). In this instance a fourteen-year lapse is so remote that the evidence is rendered significantly less probative, and the danger of unfair prejudice correspondingly outweighs any probative value. Here, the State relied on the old convictions to bolster a weak case, without regard to the significant lapse in time.

Moreover, although the 1987 offenses involved possession and delivery of methamphetamine, the 2002 charges were related to possession of pseudoephedrine and possession of paraphernalia with intent to manufacture. In order for evidence of prior bad acts to be relevant, the prior acts must be similar to the offense with which the defendant is charged. *Johnson v. State*, 333

---

[1] *Brenk v. State*, 311 Ark. 579, 847 S.W.2d 1 (1993), involved the admission of testimony about threats made to appellant's ex-wife "in the late 1970s and early 1980s" to kill her under circumstances similar to the death of the appellant's current wife in 1990, which the supreme court characterized as having been made "several years earlier." However, Brenk did not involve the remoteness of the prior acts and contained no discussions whatsoever of this issue. Moreover, the Brenk court relied upon *Snell v. State*, 290 Ark. 503, 721 S.W.2d 628 (1986), which involved more contemporaneous acts and likewise contained no discussion whatsoever on the issue of remoteness of the prior acts.

Ark. 673, 972 S.W.2d 935 (1998). The 2002 offenses are different in nature, as they are related to the actual manufacture, further lessening the probative value of the earlier convictions. We do not agree with the State's assertion that Nelson's prior convictions for possession and delivery of methamphetamine were necessarily probative of his intent to manufacture the drug. In sum, we agree that the prior convictions were improperly admitted during the guilt phase of Nelson's trial, and reverse and remand for new trial.

Reversed and Remanded.

GLOVER, NEAL and BAKER, JJ., agree.

VAUGHT and CRABTREE, JJ., dissent.

TERRY CRABTREE, Judge, dissenting. I dissent from the majority's opinion as I believe that appellant's prior 1988 convictions were properly admitted before the trial court pursuant to Arkansas Rule of Evidence 404(b). At trial, appellant defended his case by claiming that he was merely present in the vehicle that the police had searched. Appellant claimed that the drugs belonged to his passenger. Clearly, this defense raised issues of knowledge and intent. As a result, I believe that the trial court admitted appellant's prior bad acts to allow the State to prove appellant's knowledge and intent at the time of the traffic stop. See Johnson v. State, 333 Ark. 673, 972 S.W.2d 935 (1998). I suggest that appellant's prior bad acts were admitted for a purpose other than proving his past bad character and the likelihood that his present behavior conformed to it.

To be admissible under Arkansas Rule of Evidence 404(b), evidence must be similar in kind and not overly remote in time to the crime charged. See Bragg v. State, 328 Ark. 613, 946 S.W.2d 654 (1997). When admitted for the purpose of showing intent, the prior acts need not be duplicates, but must be sufficiently similar to support an inference of criminal intent. United States v. Burkett, 821 F.2d 1306 (8th Cir. 1987). In fact, the degree of similarity between the earlier crimes and the present one need not be striking. Barnes v. State, 346 Ark. 91, 55 S.W.3d 271 (2001). I am convinced that appellant's prior bad acts were sufficiently similar in kind to the offenses charged in this case. Here, appellant's prior bad acts, possession and delivery of methamphetamine, involved the very type of crime involved in the instant offenses. The evidence of the prior convictions demonstrates appellant's knowledge of the methamphetamine manufacturing process based upon his hands-on experience with the substance.

Prior bad acts and the current offenses must not be too separated in time or the evidence will be considered unduly remote. *See United States v. McCarthy*, 97 F.3d 1562 (8th Cir. 1996), *cert. denied*; *Thompson v. United States*, 519 U.S. 1139 (1997) (holding a seventeen-year conviction not too remote in time); *United States v. Engelman*, 648 F.2d 473 (8th Cir. 1981) (holding thirteen-year-old offense not too remote in time); *Brenk v. State*, 311 Ark. 579, 847 S.W.2d 1 (1993) (admitting thirteen-year-old threats made to ex-wife). The length of time between the incidents clearly affects the relevance of the offered evidence, but there is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent. *See* Ark. R. Evid. 404(b). The Eighth Circuit applies a reasonableness standard to determine whether a prior offense occurred within a relevant time frame for purposes of Rule 404(b). *United States v. Green*, 151 F.3d 1111 (8th Cir. 1998). In the case at bar, approximately fourteen years had elapsed between appellant's 1988 convictions and his February 2002 arrest. As the Eighth Circuit has applied the reasonableness standard and deemed seventeen and thirteen-year-old offenses to be acceptable, *see Thompson, supra*; *Engelman, supra*, I believe that use of appellant's fourteen-year-old convictions is also reasonable.

Finally, the probative value of the evidence must not be substantially outweighed by unfair prejudice. *Carter v. State*, 295 Ark. 218, 748 S.W.2d 127 (1988). This determination lies within the sound discretion of the trial judge. *Id.* Here, appellant's prior convictions and the present offenses involved the intent element relating to the illegal substances. Thus, the probative value of the prior convictions was high. Furthermore, I cannot say that the probative value was substantially outweighed by any unfair prejudice as the trial court gave cautionary instructions when admitting the evidence.

Evidence of a defendant's prior bad acts may be admissible with a proper cautionary instruction by the court. *Abernathy v. State*, 325 Ark. 61, 925 S.W.2d 380 (1996). In this case, the trial court gave the jury two limiting instructions regarding the impermissibility of considering appellant's previous convictions as propensity evidence. I believe that the trial court carefully precluded the admission of certain possibly prejudicial aspects of appellant's prior convictions. Based upon the foregoing analysis, I cannot say that the trial court abused its discretion in allowing the admission of the 1988 convictions for a limited and proper purpose.

VAUGHT, J., joins.